**CENTRAL OPERATING COMPANY,**
Appellee,

v.

**UTILITY WORKERS OF AMERICA,
AFL–CIO, et al., Appellants.**

No. 73–1714.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 7, 1973.

Decided Jan. 24, 1974.

remanding the case to the district court for dismissal of the complaint against individual defendants with prejudice.

Irwin Geller, New York City (Donald F. Menagh, New York City, and Musgrave & Musgrave, Point Pleasant, W. Va., on brief) for appellants.

William B. Poff, Roanoke, Va., (Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., E. Dennis White, Jr., Vinson, Meek & White, Huntington, W. Va., on brief) for appellee.

Before CLARK, Associate Justice,* and WINTER and RUSSELL, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff, the owner and operator of an electric power plant, sued the local union, the national union and certain individuals, who were plaintiff's employees and officers of the local union, alleging a violation of the "no strike" provision of the collective bargaining agreement to which plaintiff and the union defendants were parties and claiming injunctive relief and damages.[1] It obtained a default judgment against all defendants. All defendants later moved to have the default judgment set aside; and from the denial of their motions, all defendants appeal.

We agree with the national union that the district court lacked *in personam* jurisdiction over it. We find no basis on which to disturb the judgment against the local union. Plaintiff has suggested that if the default judgment against the local union is not disturbed, the judgments against the individual defendants may be set aside or vacated. We reverse as to the national union, affirm as to the local union and vacate the judgments against the individual defendants,

## I.

The collective bargaining agreement of July 19, 1971 between the parties contained a "no strike" provision. In May of 1972, a dispute arose concerning the overtime call procedures in effect at plaintiff's Philip Sporn plant in Mason County, West Virginia. This dispute culminated in a work stoppage that began in the late evening of May 27, 1972, and continued into the next day. It is undisputed that this work stoppage violated the "no strike" clause of the collective bargaining agreement, but each defendant denies responsibility for the breach.

On May 28, 1972, while the stoppage was still in progress, plaintiff filed its complaint in this action. It alleged that defendants had threatened to call a work stoppage if plaintiff did not act favorably on the overtime grievance and that they had made good on such threat on May 27th. Defendants have, throughout the course of this litigation, maintained that they never threatened a work stoppage, were not responsible for such stoppage as occurred, and, indeed, actively sought to prevent it. The complaint prayed for a temporary restraining order against continuance of the work stoppage pending a hearing and compensatory and punitive damages.

On May 28, 1972, the district judge ordered that defendants appear on June 1, 1972, to show cause why a preliminary injunction against picketing and striking at the Philip Sporn plant should not issue. In the interim, defendants, their agents and members were temporarily restrained from those activities. Copies of the complaint, summons, and

---

* Supreme Court of the United States, retired, sitting by designation.

1. Plaintiff was Central Operating Company (hereafter called "plaintiff" or "Central"). The local union was Local 426 of the Utility Workers Union of America, AFL–CIO (hereafter called "the local union"), and the national union was Utility Workers Union of America, AFL–CIO (hereafter called "the national union"). Suit was based on § 301 of the Labor Management Relations Act, 29 U.S. C. § 185.

temporary restraining order were personally served upon the local union and upon five of the individual defendants within the State of West Virginia. Service upon the national union was obtained by delivering copies of the complaint, summons and temporary restraining order to Mr. Potter, a national staff representative of the national union, at his home in Girard, Ohio, on June 10, 1972.

When the existence of the temporary restraining order became known to the employees participating in the work stoppage at the Philip Sporn plant, they discontinued picketing and returned to work. As a result of plaintiff's successive *ex parte* applications, the hearing on the temporary injunction set for June 1, 1972, was continued by orders entered on June 1, 1972, June 12, 1972, June 22, 1972, June 30, 1972, and July 11, 1972. Defendants did not appear on any of the dates set for the continued hearing; and during this period, no attorney entered an appearance in behalf of any of the defendants. No answer to the complaint was ever filed despite the fact that such an answer was due by June 22, 1972, according to the terms of the summons. The district court's final continuance order of July 11, 1972, set the date of the continued hearing for July 20, 1972, and also provided that "the Defendants shall file it's [sic] answer or any other responsive pleading prior to the aforesaid date."

When none of the defendants appeared at the hearing on July 20, 1972, and no answer or other responsive pleading had been filed, plaintiff moved for judgment by default. The district court granted the motion, and after having heard plaintiff's evidence on the damages it suffered as a result of the work stoppage, entered a judgment against all defendants, jointly and severally, in the amount of $13,701.38.

Between July 25, 1972 and August 4, 1972, copies of the district court's judgment order were served upon all defendants. On November 22, 1972, all defendants appeared in the proceedings, moved to set aside the default judgment, and tendered an answer to the original complaint. As grounds for the motion, the national union urged that the judgment against it was void because it had never been subjected to the district court's *in personam* jurisdiction by service of process in a manner authorized by law. The individual defendants asserted that the judgment was void as to them because the district court lacked subject matter jurisdiction over the claim against them individually for breach of contract. The local union and the individual defendants both urged that they never received notice of the continuance orders in this action and that the entry of default under such circumstances deprived them of due process of law, thereby rendering the judgment void. Finally, the local union and the individual defendants asserted that they ought to be relieved of the judgment pursuant to Rule 60(b)(1) F.R.Civ.P. on the ground that entry of default was due to mistake and excusable neglect on their part and that they had a meritorious defense to the claim.

After an evidentiary hearing, the district court, by memorandum order, denied defendants' motion. The court was satisfied that all the defendants had been properly served, and that it had subject matter jurisdiction under 29 U.S.C. § 185(a) over all the claims in the suit. The court denied relief from judgment under Rule 60(b)(1) because of defendants' "inexcusable dereliction" in failing to seek relief from judgment until almost four months after receiving notification.[2] As a further ground for denying the motion to vacate, the district court said that "defendants have failed to carry their burden of showing

---

2. The district judge erroneously characterized the delay between notification of default judgment and defendants' motion to vacate as "some five months." However, we do not regard this minor miscalculation as material.

they have a meritorious defense to the claim."

## II.

■ It is axiomatic that a federal court cannot acquire *in personam* jurisdiction over a defendant who does not voluntarily appear unless he is served with process in a manner authorized by federal statute or rule. Robertson v. Railroad Labor Bd., 268 U.S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119 (1925). We therefore turn to the national union's contentions that because extraterritorial service of the summons and complaint upon its agent in Ohio was not authorized by any statute or rule,[3] *in personam* jurisdiction over the national union was not acquired, and the judgment against the national union was void.

Rule 4(f), F.R.Civ.P., provides that the process of the district court may be served beyond the territorial limits of the state in which the court sits when such service is authorized by statute of the United States or the federal rules of civil procedure. Plaintiff contends that 29 U.S.C. § 185(d) authorizes service of process upon unions, named as defendants in suits within the grant of subject matter jurisdiction contained in § 185(a), to be effected anywhere in the United States.[4] Section 185(d) provides that:

> The service of summons, subpoena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

Plaintiff claims that the phrase *"any court"* manifests Congress' intention to permit a United States court in any district to summon a union defendant by service effected in any other district.

■ We find plaintiff's reading of § 185(d) a strained one. The section, on its face, appears to be concerned with the proper *agent* for receipt of process upon the union and not the *locale* of service, and this reading is supported by the legislative history of the Labor Management Relations Act. Section 185 was designed to provide a federal forum for the adjudication of disputes between unions and employers arising out of violations of collective bargaining agreements. Prior to the enactment of § 185(d), a major obstacle to such suits had been the status of unions under state law as unincorporated associations. As such, they lacked capacity to sue and be sued and, concomitantly, could not be summoned before the court by service of process upon their agents. We believe that Congress enacted § 185(d) in order to remove such obstacles by providing that the service of summons upon an agent of a union would be adequate to subject such union to the jurisdiction of the federal court issuing the summons. Plaintiff has not pointed to any legislative history suggesting that Congress also intended to authorize the execution of such summons beyond the borders of the state in which the issuing court sits, and we have found none.

Nor are we persuaded that, in order to effectuate the general congressional purpose to subject unions to suit for breach of collective bargaining agreements to which they are parties, it is necessary to interpret § 185(d) to authorize extraterritorial service. Plaintiff contends that unless § 185(d) is so interpreted, employers will be unable to sue a national union for breach of a collective bargaining agreement in federal court in the state where the employees covered by the agreement work as long as an agent authorized to accept

3. The national union concedes that it had sufficient contacts with West Virginia to render it amenable to suit in federal court there for breach of the collective bargaining agreement in this case. It further concedes that Mr. Potter was a proper agent for re-

ceipt of process directed at the national union under 29 U.S.C. § 185(d).

4. The only other court known to have considered this contention rejected it. Daily Review Corp. v. Int'l Typographical Union, 9 F.R.D. 295 (E.D.N.Y.1949).

service for such national union cannot be found in such state, even though the national union is amenable to suit for breach in such state,[5] and venue lies therein. 29 U.S.C. § 185(c).[6] It is urged that we should not tolerate such an anomaly.

■ We are not convinced that the anomaly is great enough to impair substantially the congressional purpose of providing a federal forum for suits against unions for breach of collective bargaining agreements. If there is venue for an action against a union in a certain district court, the likelihood is great that agents of the union will be present from time to time in that district in pursuit of their representational activities and the employer will have a fair opportunity to effect service. In the instant case, the record reveals that Mr. Potter was in West Virginia, subsequent to the filing of complaint in this suit, conferring with plaintiff's officers about this dispute. Service might have been effected on any of those occasions. Furthermore, any extraterritorial service provisions of the state in which the district court is held will be available to the employer through the borrowing provision of Rule 4(e), F.R.Civ.P. Most states have substitute service of process provisions as part of their long-arm statutes which are adequate to effect

services upon unions amenable to suit in a district court held in such state on an action under 29 U.S.C. § 185(a). Thus, we see no compelling reason to interpret § 185(d) to authorize nationwide service of process in order to effectuate the policy of providing a federal forum for suits against unions for breach of collective bargaining agreements.

■ Plaintiff also argues that proper service was effected in accordance with certain provisions of the West Virginia rules, made applicable to federal actions by virtue of Rule 4(e) F.R.Civ.P. We conclude, however, that service upon Mr. Potter in Ohio was ineffective, under the West Virginia rules cited by plaintiff, to acquire *in personam* jurisdiction over the national union.

Section 31–1–71, W.Va.Code (1972 Replacement Volume) provides that a foreign corporation "doing business" in West Virginia, as defined by the statute, may be sued in the courts of that state on certain kinds of claims arising out of such business. Service upon the foreign corporation in such suits is to be made upon the West Virginia state auditor. Assuming, without deciding, that the national union is a "foreign corporation" under the statute, and that its representation activity and execution of the collective bargaining agreement rendered it amenable to suit in West Vir-

---

5. Federal common law governs the substance of suits brought under 29 U.S.C. § 185(a). Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In the absence of an applicable statute, the amenability of a person not found within the state to suit on a federal cause of action in a district court sitting in that state is governed by the same standards that set the due process limits on a state's judicial enforcement powers. Lone Star Package Car Co. v. B. & O. R.R., 212 F.2d 147 (5 Cir. 1954); Fraley v. C. & O. Ry., 397 F.2d 1 (3 Cir. 1968). Thus, where a national union performs acts of representation in behalf of employees who work in a certain state and is a party to their collective bargaining agreement, the minimum contacts necessary to render it amenable to suit in such state would seem to be satisfied. See, McGee v. Int'l Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

6. Section 185(c) provides that:
 For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.
 It has been uniformly held that subsection (c) is a venue provision in spite of the use of the word "jurisdiction." See, e. g., United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO, Local 102 v. Lee Rubber & Tire Corp., 394 F.2d 362 (3 Cir.), cert. denied, 393 U.S. 835, 89 S.Ct. 108, 21 L.Ed. 2d 105 (1968).

ginia under § 31–1–71, we are met with the undisputed fact that service upon the state auditor was *not* made in this instance. Service upon the state auditor is the only authorized manner of extraration.

While Rule 4(d)(9), W.Va.R.Civ.P. Appendix W.Va.Code (1966), authorizes service upon an unincorporated association by delivering a copy of the summons and complaint to "any agent" of such association, all of the types of service authorized in the subdivisions of Rule 4(d) must be executed "within the State."[7] Service in Ohio is therefore not authorized.

 Rule 4(f), W.Va.R.Civ.P., provides for personal service outside the state on both resident and non-resident defendants. However, in the case of non-resident defendants, such extraterritorial personal service has only the effect of constructive service. It cannot be seriously contended that the national union is a resident of West Virginia. Therefore, the service upon Mr. Potter in Ohio had only the effect of constructive service upon the national union. Under West Virginia law, a judgment that operates *in personam* cannot be rendered against a defendant upon whom only constructive service has been executed. Fabian v. Kennedy, 333 F.Supp. 1001 (N.D.W.Va.1971).

Since there was no authority, under either federal or West Virginia law, for effective service of process upon an agent of the national union in Ohio, we conclude that the default judgment against the national union was void, and we reverse it. Since we reverse for lack of jurisdiction, our reversal is without prejudice to plaintiff's right to seek further relief if valid service of process is effected.

### III.

The only attempt to notify any of the defendants of the continuance orders obtained upon plaintiff's *ex parte* motions was undertaken by plaintiff's attorney. He sent copies of each order to two officials of the national union, Mr. Munger and Mr. Potter, but none was ever sent to the local union or to the individual defendants. The local union and the individual defendants did have knowledge that the hearing on the temporary injunction scheduled for June 1, 1972 had been postponed. Mr. Munger called defendant Searls, president of the local union, on May 31, 1972, and told him that the June 1st hearing had been "delayed." Mr. Searls was not told the date of the rescheduled hearing because Mr. Munger had just elicited a promise from plaintiff's attorney to seek a continuance by *ex parte* motion and the date of the continued hearing was not as yet known. At a grievance hearing held on or about June 7, 1972, Mr. Searls asked an agent of plaintiff, Mr. Larew, whether these proceedings were still in progress. Mr. Larew responded in the affirmative but did not indicate the date of the next hearing.

The individual defendants and the local union contend that the entry of the default judgment against them for failing to appear or file a responsive pleading by July 20, 1972, the date of the last continued hearing, in the absence of actual notice of the continuance order of July 11, 1972, violated due process of law.

 Default judgments entered for failure, after proper service, to answer within the time allowed do not violate due process. Defendants were in default for failing to answer within the allowed period. The record does not disclose any reason for them to believe that the time for answer had been enlarged. At best, they had grounds to believe that the hearing on the temporary injunction had been postponed indefinitely. Had the court entered a default judgment during the period between the date when

7. Rule 4(d)(9) reads:
 (d) Personal or substituted service of process shall be made by delivering or posting within the State a copy of the summons and of the complaint together, in the manner prescribed in this subdivision.
 \* \* \* \* \*
 (9) Unincorporated Associations.—. . .

the time for answer expired, June 22, 1972, and the last continuance order, July 11, 1972, there would be no doubt that the default judgment satisfied the requirements of due process.

The order of July 11, 1972 enlarged the time for answering the complaint to July 20, 1972. We have no doubt that, had defendants filed an answer by that date, entry of default would have been improper. While the July 11th order had the effect of affording defendants the opportunity to cure their default by responding within the enlarged time, we do not think that it made the subsequent entry of a default judgment upon their failure to answer within the new limit violative of due process.

Subsequent to June 22, 1972, defendants were subject to the entry of a default judgment at any time without prior notice; and their right to due process was no bar. Their right to due process was not enhanced by an order, of which they had no knowledge, suspending the effect of a prior default. Failure to give defendants notice of the July 11th order may have deprived them of their newly acquired opportunity to cure their default, but this opportunity was not "property" within the meaning of the due process clause unless defendants had knowledge of it and could, therefore, form expectations with respect to it. *Cf.* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972). Thus, the failure to give the individual defendants and the local union notice of the continuance orders in this case does not render the judgment void as to them.

Individual defendants and the local union alternatively contend that the failure to give notice of the July 11th order violated Rules 5(a) and 77(d), F. R.Civ.P. This contention is without merit, since the requirement to serve court orders set forth in those rules does not apply to service of a party "in default for failure to appear." At the time the July 11th order was entered, the defendants had both failed to enter an appearance and failed to answer within the time allotted in the complaint. They were, therefore, not entitled, under the rules, to notice of that order.

## IV.

The individual defendants and the local union also sought relief from the default judgment under Rule 60(b)(1) on the ground that their default was caused by inadvertent and excusable mistake and erroneous belief. The granting of relief from judgment on such grounds is a matter committed to the discretion of the district court, the exercise of which will not be disturbed on appeal absent a showing of abuse. Universal Film Exchanges, Inc. v. Lust, 479 F.2d 573, 576 (4 Cir. 1973); Consolidated Masonry & Fireproofing v. Wagman Construction Corp., 383 F.2d 249, 251 (4 Cir. 1967). In order to obtain relief under Rule 60(b)(1), a party must show that he had an acceptable excuse for lapsing into default *and* that he has a meritorious defense to the action. Defendants probably made a sufficient showing on both of these points.[8] How-

---

8. Although plaintiff's failure to give defendants notice of the July 11th order did not violate Rules 5(a) and 77(d), it probably qualifies as a good excuse for the default which occurred on July 20th. The July 11th order was obviously designed to elicit some *response from defendants.* It hardly accords with the spirit of that order for notice thereof never to reach the defendants.

In spite of the district judge's finding that defendants failed to carry their burden of showing of a meritorious defense, the record

indicates otherwise. Mr. Searls testified at the hearing on the motion to vacate that neither he nor any of the other individual defendants called the work stoppage and that he himself actively sought to prevent it. There was no evidence to contradict this testimony, but it seems clear that the district judge did not believe Searls' testimony. However, to warrant relief, a party is not required to establish a meritorious defense by a preponderance of the evidence. The purpose of the motion was only to open the

ever, delay in seeking relief from a default judgment may properly be considered by the district court in determining whether to grant such relief. Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp., 383 F.2d at 251. Defendants waited almost four months after receiving notice of the default judgments before filing their motions to vacate. They provide no satisfactory explanation for this delay. We cannot, therefore, say that the district judge abused his discretion in relying upon the delay, characterized by him as "inexcusable dereliction," in denying relief from judgment. Since the district court placed primary reliance upon the factor of delay, we affirm its denial of relief under Rule 60(b)(1).

### V.

In argument of this appeal, plaintiff has conceded that if its judgment is undisturbed against the local union, the judgments against individual defendants should not stand. Since the complaint alleges only the acts of the individual defendants as the basis of the local union's liability, it would seem to follow that, if the local union is liable, the individual defendants' conduct must have been performed in their capacity as union officials. Under Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), there would probably be no right under federal law to relief against them individually.

Accepting plaintiff's concession, we therefore vacate the judgments against the individual defendants and remand the case to the district court for dismissal of the complaint as to them with prejudice.

Reversed in part; affirmed in part; and remanded. Costs to be divided equally between the parties.

---

default judgment so that there may be a trial on the merits; he did not seek a judgment in his favor. Therefore, we are of the view that a party satisfies his burden of demonstrating a meritorious defense when he introduces uncontradicted testimony which, if believed, establishes facts constituting a meritorious defense. *See*, Tolson v. Hodge, 411 F.2d 123, 130 (4 Cir. 1969), where the mere assertion of facts constituting a meritorious defense in an original complaint apparently satisfied the requirement of showing a meritorious defense to a counterclaim upon which default judgment had been entered.

The erroneous view that the district judge took of a party's burden of demonstrating a meritorious defense did not harm defendants because of the alternative independent basis for denying relief discussed *infra*.