**SQUARE CONSTRUCTION COMPANY and La Fera Contracting Company, Appellants,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellee.**

**No. 80–1447.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1981.

Decided Aug. 17, 1981.

Robert H. Hunt, Washington, D.C. (John B. Tacke, Michael E. Lundy, Washington, D.C., on brief), for appellants.

Leonard Petkoff, Washington, D.C. (Tod Gold, Washington, D.C., on brief), for appellee.

Before RUSSELL, WIDENER and PHILLIPS, Circuit Judges.

WIDENER, Circuit Judge:

This case is before us on the appeal of Square Construction Company and La Fera Contracting Company (Square/La Fera) from the order of the United States District Court for the Eastern District of Virginia denying Square/La Fera's motion pursuant to Federal Rules of Civil Procedure 60(b)(2) and (3) to vacate its judgment previously entered in favor of the Washington Metropolitan Area Transit Authority (WMATA or the Authority). We hold that the district court's denial of that motion was an abuse of discretion, and remand the case for further proceedings with instructions.

On February 3, 1972, WMATA awarded Square/La Fera a contract for the construction of the C–7 section of the Washington metropolitan area subway system at a total contract price in excess of $23,000,000.00. In early January of 1974, following expressions of concern by WMATA over the lack of progress under that contract, the Authority terminated Square/La Fera's contract for alleged default, with some $14,-895,910.75 in work remaining to be performed. WMATA subsequently agreed to pay another contractor $19,717,576.13 to complete the C–7 contract, and charged the approximately $4.8 million in excess reprocurement costs to Square/La Fera.

Square/La Fera contested its termination for default and the Authority's assessment of excess costs against it in separate appeals to the Corps of Engineers Board of Contract Appeals.[1] At the August 1977 hearing on the issue of excess costs, Square/La Fera claimed that the assessment of such costs was improper because they were not minimized by WMATA's method of reprocurement. See *Marley v. United States*, 423 F.2d 324, 191 Ct.Cl. 205 (1970). As proof, it compared the $19.7

---

1. WMATA's General Manager is the official authorized to decide such appeals. *WMATA: Procurement Policies and Procedures*, Chapter V, Section C. By resolution of the WMATA Board of Directors, June 3, 1971, the Corps of Engineers Board of Contract Appeals is designated to hear such appeals and recommend final decisions to the General Manager.

million paid by WMATA for completion of the C–7 contract with La Fera's estimate of $12 million and an independent expert's estimate of $13 million.

To bolster its position on this issue in its case before the BCA, Square/La Fera sought information concerning WMATA's reprocurement process. On March 29, 1977, it formally requested in writing that WMATA make the following documents available to it for inspection and copying:

The requested documents are:

1. All documents relating to the reprocurement contract, including but not limited to the following:

When WMATA failed to include any estimate of the reprocurement costs in its response to this request, Square/La Fera specifically requested to be " . . . furnished with a copy of the Authority's Estimate (together with the breakdown of items and back-up materials) for completion of C–7 after termination." This prompted WMATA to provide a copy of an estimate originally prepared by DeLeuw Cather, WMATA's General Engineering Consultant, and adopted without alteration by the Authority. This estimate was in the amount of $19,146,463.23, and, as the official Authority estimate, was used for the purpose of assessing the reasonableness of the bids received by WMATA during reprocurement. As this estimate was within a small percentage of the amount paid upon reprocurement and because the Board discounted Square/La Fera's estimate of $12 million as self serving and unreliable, the Board found that WMATA's method of reprocurement was reasonable and that the excess costs were properly assessed against Square/La Fera. The Board's decisions in favor of WMATA on both default and reprocurement and damages were adopted by the Authority through its General Manager.[2]

Pursuant to D.C. Code § 1–1434 (1973) and Article 1.6 of the contract,[3] Square/La Fera sought judicial review of those administrative decisions in the United States District Court for the Eastern District of Virginia. The district court affirmed the decision of the Authority on both issues, from which Square/La Fera appealed to this court in No. 79–1510. That case is also today decided.

In late July of 1979, following entry of the district court's judgment affirming the Board's order, Square/La Fera became aware that WMATA had withheld an estimate of the cost of completion of the C–7 section that was substantially lower than the DeLeuw Cather estimate it had adopted. While this estimate, prepared by Bechtel Associates, an engineering firm of national reputation and WMATA's Construction Consultant, has never been produced in court or for Square/La Fera's examination, WMATA has admitted its existence and variously represents its amount to be either $16,296,097.99 or $16,347,977.99,[4] depending on various options therein which are yet unexplained.

On September 27, 1979, Square/La Fera filed a notice to take the deposition of a certain William Hall, the Bechtel employee responsible for the preparation of the Bechtel estimate. The district court quashed

2. BCA No. 3494 (Dec. 19, 1975) (default decision); BCA No. 3841 (June 1, 1978) (damages and reprocurement costs decision).

3. Congress has provided that "[t]he United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against . . ." WMATA. Act of Nov. 6, 1966, Pub.L.No.89–774, § 4, 80 Stat. 1324.

Article 1.6 of the contract provides, in pertinent part:

(a) . . . The decision of the Board of Directors or its duly authorized representative for the determination of such appeals shall be final and conclusive unless determined to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

\* \* \* \* \* \*

(b) . . . Nothing in this contract, however, shall be construed as making final the decisions of the Board of Directors or its representative on a question of law.

4. Square/La Fera alleges that when it first learned of the existence of the Bechtel estimate, it was informed that it was in the amount of $13 million.

that notice on the grounds of undue delay and that the Bechtel estimate was merely corroborative of La Fera's testimony. Square/La Fera then moved this court for leave to depose Hall. While that motion was denied, our order noted that appellants might seek relief from the district court pursuant to Rule 60(b), and, if such relief were there denied, might appeal from that order. Square/La Fera filed such a motion to vacate in the district court on June 13, 1980, claiming that WMATA's failure to disclose the Bechtel estimate constituted fraud, misrepresentation or misconduct under FRCP 60(b)(3), and that the estimate was newly discovered evidence under FRCP 60(b)(2). The district court denied the motion on the grounds that no evidence had been withheld, that the Bechtel estimate would not dictate a different decision by that court, and that, assuming the existence of the estimate in the amount of $13 million, it was merely cumulative of other evidence. The propriety of that decision is now before us on the appeal of Square/La Fera.

■■■ A motion under Rule 60(b) is addressed to the sound discretion of the district court and will not be disturbed on appeal save for a showing of abuse. *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 252 (4th Cir. 1974); *Consolidated Masonry & Fireproofing v. Wagman Construction Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). As a threshold matter, the movant must demonstrate the existence of a meritorious claim or defense. *Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979); *Universal Film Exchanges, Inc. v. Lust*, 479 F.2d 573, 576 (4th Cir. 1973). A party seeking relief under subsection (3) of the rule must also prove the misconduct complained of by clear and convincing evidence and demonstrate that such misconduct prevented him from fully and fairly presenting his claim or defense. *Keys v. Dunbar*, 405 F.2d 955, 957–58 (9th Cir. 1969); *Nederlandsche Handel-Maatschappij, N.V. v. Jay EMM, Inc.*, 301 F.2d 114 (2d Cir. 1962); see *Toledo Scales Co. v. Computing Scale Co.*, 261 U.S. 399, 421, 43 S.Ct. 458, 463, 67 L.Ed. 719 (1923). In con-

sideration of these proofs, the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine, within its discretion, whether relief is appropriate in each case. *Compton*, p. 102.

■ Application of these standards to the case at hand presents no difficulty. It is clear beyond doubt that Square/La Fera's assertion, that the method of reprocurement was not designed to minimize reprocurement costs, raised a meritorious defense. In *Marley*, supra, the Court of Claims held that such action was a bar to recovery of excess costs, and we agree.

Square/La Fera has also met its burden of showing the fact of misconduct on the part of an adverse party in the form of WMATA's failure to produce the Bechtel estimate pursuant to a proper request. The existence of the Bechtel estimate is established by numerous affidavits and is undisputed. While the date of the Bechtel estimate, along with its other specific contents, remains unknown to all save WMATA, the fact that it was considered contemporaneously with the DeLeuw Cather estimate in arriving at an official Authority estimate is evidence that it was in WMATA's possession during the reprocurement, well before Square/La Fera's March 29, 1977 discovery request. Furthermore, the production of the Bechtel estimate was plainly called for by Square/La Fera's request for "... all documents relating to the reprocurement contract...." The Authority's argument that the Bechtel estimate was not one of the documents relating to the reprocurement is frivolous. Indeed, it is difficult to imagine what the Bechtel estimate might have related to if not to the reprocurement contract. Thus, Square/La Fera has substantiated its claim of misconduct by WMATA's deliberate withholding of this most relevant documentary evidence.

It is also evident that this misconduct prevented Square/La Fera from fully and fairly presenting its defense to the assessment of reprocurement costs. As previously noted, Square/La Fera defended this is-

72

sue on the ground that WMATA's method of reprocurement was not designed to minimize excess costs. Evidence that Bechtel, which was in the employ of WMATA, had prepared an estimate at substantial variance with that used by WMATA was most relevant to Square/La Fera's defense, and the deliberate withholding of this estimate may cast doubt on WMATA's entire claim for damages and reprocurement costs.

No question concerning the Bechtel estimate, including its reasonableness and the Authority's motives for disregarding it, could have been explored without knowledge of and access to that document.[5] By denying Square/La Fera the opportunity to inquire into that estimate and all the circumstances surrounding its preparation, WMATA has prevented it from fully and fairly presenting its defense.

Turning now to concerns of policy, we find that WMATA's failure to disclose the Bechtel estimate struck at the very heart of the fact finding process entrusted to the Board of Contract Appeals. The Authority seeks to avoid disclosure of the estimate on the basis that it was unreasonably low and thus not subject to serious consideration. While a determination of that issue is appropriate to the resolution of the case, it remains an issue of fact for the Board to first decide. By depriving the Board of the opportunity to make that determination, WMATA dealt a fatal blow to the entire proceeding. As we have stated before, "... the need 'to expedite cases, to fully utilize the court's time, to reduce overcrowded calendars and to establish finality of judgments * * * should never be used to thwart the objectives of the blind goddess' of justice itself." *Compton*, supra, at 103, quoting *Boughner v. Secretary of Health, Ed. & Welf., U.S.*, 572 F.2d 976, 978–79 (3d Cir. 1978). Therefore, in the case before us

we hold that the policy of deterring misconduct which threatens the fairness and integrity of the fact finding process must outweigh considerations of finality. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978).[6]

The district court's rationale for denying appellants' motion neither disturbs this analysis nor sustains that court's exercise of discretion. The district court stated as its reasons for denial that the Bechtel estimate was not evidence which was withheld; that the consideration of the Bechtel estimate would not alter the court's decision of the case; and that, assuming the existence of the Bechtel estimate were in the amount of $13 million, such evidence was merely cumulative of other evidence.

■ We think the finding of the district court that the Bechtel estimate was not evidence that was withheld is clearly erroneous. Little or nothing in the record sustains this finding; indeed, the evidence to us seems overwhelmingly to the contrary. Setting aside a judgment under FRCP 60(b)(3) does not require that the material withheld be sufficient to alter the district court's judgment, and we think this is more especially true when the district court is not the initial fact finder, as here. *Rozier*, supra, at 1339. We also think that the Bechtel estimate is not merely cumulative. It must be remembered that Bechtel to repeat, is an engineering firm of national reputation and was in the employ of WMATA, on the very job in question, at the time the estimate was made. Nothing is shown to the contrary of the proposition that Bechtel was in an unusually good position to make an intelligent estimate of reprocurement costs and that it was highly qualified to do so.

5. It is unclear whether and how WMATA ordered the Bechtel estimate. During proceedings before the district court on October 1, 1979 concerning WMATA's Motion to Vacate Notice of Deposition, the Authority's counsel represented that the Authority had requested Bechtel to estimate the cost of completion of the C–7 contract. In its brief to this court, WMA-

TA abandons that position and states that it "... can only speculate on this matter."

6. We do not reach the question of whether the district court abused its discretion in denying Square/La Fera's motion for relief based upon newly discovered evidence pursuant to Rule 60(b)(2).

WMATA's other arguments are similarly unavailing. Its claims that Square/La Fera's motion for relief under Rule 60(b)(3) was not timely made and that the denial of Square/La Fera's motion to take the deposition of Mr. Hall is *res judicata* of the merits of the FRCP 60(b) motion, we think are each without merit.

In view of all we have said, however, we doubt that we should simply reverse the district court's denial of the appellants' Rule 60(b)(3) motion, and direct that the case be remanded to the Board of Contract Appeals. The district court on the same record only assumed the existence of the Bechtel estimate, and we do likewise for this purpose.

Accordingly, we vacate the order of the district court denying Square/La Fera's motion under FRCP 60(b)(3) and remand this case to the district court with instructions to permit appropriate discovery with respect to the Bechtel estimate in order to ascertain its existence in fact, as well as all the circumstances surrounding its preparation. At the conclusion of such discovery and following any hearing the district court may deem appropriate, should the district court determine that the Bechtel estimate in fact exists and is an estimate of the cost of reprocurement of the C-7 section of the Metropolitan Area Subway System, then it shall grant the FRCP 60(b)(3) motion and vacate its order affirming the actions of the Board of Contract Appeals (this order is reviewed by us in *Square Construction Company, et al. v. Washington Metropolitan Area Transit Authority*, No. 79–1510) 657 F.2d 73, and remand that case to the Board for a new trial on all issues concerning damages and reprocurement costs following such additional discovery as the Board may deem appropriate.[7] We emphasize that the sole questions before the district court on remand are: (1) Does the Bechtel estimate in fact exist? and (2) Is

the Bechtel estimate an estimate of the cost of reprocurement of the C-7 section of the subway system? If these questions are answered in the affirmative by the district court, it will remand the entire case on damages and reprocurement costs to the Board of Contract Appeals.

Unfortunately, we have met with a certain amount of vagueness and lack of response on the part of WMATA in trying to ascertain facts with respect to the Bechtel estimate. In order to commence the remand proceeding in the district court in a manner which will obviate at least some needless delay and argument, we direct that WMATA forthwith make available to Square/La Fera for inspection and copying not only the Bechtel estimate itself, but also every paper or other record of any description whatsoever associated with or related to the Bechtel estimate in even the slightest way.

VACATED AND REMANDED WITH INSTRUCTIONS.

---

7. The rules of the Board of Contract Appeals, for example, provide for discovery and that the Board may order the exchange of complicated exhibits; submission of additional evidence on any relevant matter; and, upon timely motion, the production of any document for inspection and copying. 33 C.F.R. § 210.4(a)(3) & (4),

(n)(3), (*o*) and (p)(1). While the Board may lack the power to impose sanctions upon parties refusing to comply with such orders, we know that the district court on review will not permit unjustified non-disclosure to go unremedied.