**GOULD ENTERTAINMENT CORPORATION, Plaintiff,**

v.

**Paolo BODO, Paolo Bodo Merchandising Co. and Paolo Bodo & Co., Defendants.**

**No. 83 Civ. 6509 (DNE).**

United States District Court,
S.D. New York.

Aug. 27, 1985.

Hall, Dickler, Lawler, Kent & Friedman, New York City, N.Y., for plaintiff; Norman L. Faber, of counsel.

Fine, Finkelstein, Olin & Anderman, P.C., New York City, N.Y., for defendants; Isadore B. Huss, of counsel.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This is a motion to vacate a default judgment, pursuant to Fed.R.Civ.P. 60(b)(4). The complaint is for breach of a licensing agreement and names three Italian residents, Paolo Bodo ("Bodo"), Paolo Bodo Merchandising Co. and Paolo Bodo & Co., as defendants. Because defendants are residents of Italy, service of process was made pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, February 10, 1969, 20 U.S.T. 361, T.I. A.S. 6638 ("Hague Convention"). *See* Fed. R.Civ.P. 4(i). Defendants did not answer the complaint or otherwise appear in this action. A default judgment was entered against defendants on April 20, 1984 in the amount of $20,000.00, plus interest and costs, which constitutes defendants' liability under the licensing agreement. Defendants moved to vacate the default on April 18, 1985. For the reasons stated below, the motion is denied in all respects.

## DISCUSSION

Defendants contend that service of process was improper. Plaintiff, however, has demonstrated that it complied with the requirements under the Hague Convention for service of process. Article 15 of the Convention provides:

Where a writ of summons or an equivalent document has been transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that—

(a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within the territory, or

(b) the document was actually delivered to the defendant or to his residence by another method provided for by this convention, ...

Plaintiff has submitted proof of service under Article 15, Section (b). The summons and complaint were delivered to the "central authority" designated by Italy for receipt of process. Italian authorities served the summons and complaint at 6 Via Poma, Occieppo, Inferiore ("6 Via Poma") on January 13, 1983. The Italian certification of service notes that process was served on Daniela Gibbin, a household servant at 6 Via Poma. Receipt of service is acknowledged by Ms. Gibbin as a person in the service of Bodo, authorized to receive service. In accordance with Article 6 of the Convention, the documents were returned with a certificate, stamped by the Italian court certifying that process had been served and the method of service.

Bodo contends that 6 Via Poma was not his residence, and therefore, service was not made in accordance with Article 15, section (b). This contention flies in the face of the evidence presented and is rejected. 6 Via Poma was the address at which

plaintiff communicated with Bodo throughout the negotiations and discussions concerning the licensing agreement. It was the address that appeared on Bodo's letterhead. Further, by letter dated August 6, 1982, five months before process was served in this action, Bodo notified plaintiff in writing that his "right address" was 6 Via Poma. Exhibit F to Affidavit of Michael Gould. Even in his affidavit filed with the court, Bodo refers to the house at 6 Via Poma as "my house." Exhibit B to Affidavit of Isadore Huss.

Bodo's contention that 6 Via Poma was not his residence is further contradicted by the fact that Danielle Gibbin, Bodo's cleaning lady, was present at 6 Via Poma to accept service of process on behalf of Bodo in January 1983. Moreover, Ms. Gibbin states in her affidavit submitted in support of defendants' motion that on the day she received process, she "left the house before [Bodo's] arrival." Exhibit C to Affidavit of Isadore Huss at ¶ 3. If, as Bodo contends, he did not reside at 6 Via Poma, why did his cleaning lady expect him to arrive there on the day process was served in January 1983? Bodo has only submitted his own affidavit in support of his contention that he did not reside at 6 Via Poma in January 1983. The court finds that plaintiff has made a sufficient showing that 6 Via Poma was the proper address for service on Bodo and the corporate defendants.

■ Bodo also contends that service was improper because Ms. Gibbin was only a part-time employee rather than a full-time employee. Bodo contends that under Italian law, service may be delivered to a person working at defendant's residence, only if that person is a "full-time," rather than a "temporary" employee. This contention is rejected. Article 15, Section (b) only requires that the summons be delivered to the defendant's "residence." Plaintiff complied with this requirement. Such service was "reasonably calculated to give actual notice to [Bodo] and thus [does] not offend the due process requirements of the federal constitution." 4 C. Wright & A. Miller, Federal Practice and Procedure (Civil), § 1133, at 559; see Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Given that Ms. Gibbin worked for Bodo at 6 Via Poma, that she signed as being authorized to accept service on Bodo's behalf, that she remembers receiving the summons and complaint, that Bodo was expected to arrive at 6 Via Poma on January 13, 1984, the day service was made, service was proper. Whether Ms. Gibbin worked part-time or full-time for Bodo is not determinative. Accordingly, Bodo's contention that the judgment is void, pursuant to Rule 60(b)(4), is denied.

Defendants also contend that this court should exercise its equitable power to vacate the judgment, because they have disclosed meritorious defenses. Defendants' Memorandum of Law at 9–11. Defendants do not state which subsection of 60(b) they rely on in this regard.[1] The court will deem this argument as made under Rule 60(b)(6), which by its terms allows the court to vacate the default "for any other reason justifying relief from the operation of judgment." Relief will only be granted under Rule 60(b)(6) upon a showing of "exceptional circumstances." United States v. Cirami, 535 F.2d 736, 738 (2d Cir.1976).

Article 16 of the Hague Convention and Rule 60(b) of the Federal Rules of Civil Procedure provide that a motion to vacate a default judgment must be made within a reasonable time after the defendant receives notice of the judgment. Article 16 further provides that "[e]ach contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which in no case shall be less than one year following the date of judgment." By paragraph 4 of the desig-

---

1. Article 15 of the Hague Convention must be read in conjunction with Rule 60 of the Federal Rules of Civil Procedure. Article 15 sets forth the minimum showing that must be made. Although Article 15 gives the court the "power" to relieve a defendant from a default judgment if, inter alia, defendant discloses a prima facie defense, a defendant in federal court must further establish that relief is warranted under Rule 60.

nation and declaration made by the United States in connection with the ratification of the Convention, it is provided that an application under Article 16 to vacate a default judgment "will not be entertained if it is filed: (a) after the expiration of the period within which the same may be filed under the procedural regulations of the court in which the judgment has been entered, or (b) after the expiration of one year following the date of judgment, whichever is later." Thus, under Article 16 of the Hague Convention, as construed in conjunction with Rule 60(b) of the Federal Rules of Civil Procedure, defendants were required to move to vacate within a reasonable time of receiving notice of the default judgment; however, regardless of when defendants received notice, their absolute deadline for filing the motion was one year from the entry of the default judgment.

▆ The default judgment in this case was entered on April 20, 1984. Defendants noticed the motion to vacate on April 18, 1985, two days before the expiration of the one year deadline. Bodo contends that he did not discover the existence of the default judgment until November-December 1984. Assuming, *arguendo,* that Bodo did not receive notice of the default judgment until November 1984,[2] the fact remains that he waited approximately five months before moving to vacate. The court of appeals has stated that "as the delay in making the motion [to vacate] approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'" *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne De Navigation,* 605 F.2d 648, 654 (2d Cir.1979). This motion was filed just two days short of the absolute one year deadline. Defendants, however, have not offered any explanation for the five month delay. This unexcused delay is in itself adequate basis for denying the motion. *Planet Corp. v. Sullivan,* 702 F.2d 123, 126 (7th Cir.1983); *American Metals Service Export Co. v. Ahrens Aircraft, Inc.,* 666 F.2d 718, 721 (1st Cir.1981); *Central Operating Co. v. Utility Workers of America,* 491 F.2d 245, 253 (4th Cir.1974).

▆ An additional basis for denying the motion is that defendants have failed to disclose a *prima facie* defense to the action on the merits as required by Article 16 or any "extraordinary circumstances" justifying relief under Rule 60(b)(6). Bodo contends that the contract with plaintiff was made by defendant Paolo Bodo & Co. and that Bodo cannot be held personally liable for the alleged debts of the corporation. Bodo has submitted an affidavit of legal opinion from an Italian attorney who states that under Italian law the suffix "SRL" designates a separate corporate entity and that Bodo cannot be held liable for the corporation's debts. Bodo, however, has failed to make out a *prima facie* defense in this regard. A defendant cannot merely invoke a suffix, such as "inc." or "SRL" and expect to get by. Bodo signed the licensing agreement of March 10, 1981 on behalf of an entity stated to be "Bodo Merchandising," and made no indication, either of an SRL, or that he was in fact signing on behalf of "Paolo Bodo & Co." Exhibit A to Affidavit of Michael J. Gould. Moreover, in Bodo's correspondence with plaintiff, there was every indication that he was assuming individual rights and obligations under the licensing agreement.

Even assuming that Bodo Merchandising was a separate corporate entity that under-

---

**2.** It is likely, however, that Bodo received notice of this action much earlier. Plaintiff served Bodo at 6 Via Poma, which Bodo had designated in writing as "my address." It was also the address which appeared on Bodo's letterhead. Even assuming, *arguendo,* that Bodo never received a copy of the summons and complaint, plaintiff also mailed follow-up letters to Bodo at 6 Via Poma on February 27, 1984 and June 21, 1984, which described the progress of the proceedings herein. Plaintiff did not receive a re-

sponse to these letters, nor were the letters returned. Defendants attribute this to "the vagaries of the international mailing system." Defendants' Reply Affidavit at 6. The more plausible scenario is suggested by plaintiff: that Bodo received notice of this action and the proceedings herein but elected to not to act until plaintiff uncovered assets in Puerto Rico and began enforcement proceedings. Affidavit of Norman L. Farber at ¶ 8.

took full obligation for the debt, Bodo may still be liable if there is an adequate basis for disregarding the corporate form and piercing the corporate veil. Under New York law,[3] the criteria to be used in determining whether a corporate veil may be pierced are: "(1) the absence of the formalities which are part and parcel of normal corporate existence, i.e., the issuance of stock, the election of directors, the keeping of corporate records, etc., (2) inadequate capitalization, (3) personal use of corporate funds, and (4) the perpetration of fraud by means of the corporate vehicle." *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 53 (2d Cir.1984). The burden is on the plaintiff to demonstrate some extreme circumstances which justify the disregard of the corporate entity, *Bank Saderat Iran v. Amin Beydoun, Inc.,* 555 F.Supp. 770, 774 (S.D.N.Y.1983); however, on a motion to vacate the default judgment, the burden is on Bodo to make a *prima facie* showing that he is not liable. Bodo has not offered any evidence on the question of piercing, except the conclusory affidavit of an Italian lawyer that "SRL" denotes a separate legal entity. He has not addressed any of the factors listed above. Yet, it is clear from the record thus far developed that Bodo used his own address as the address for the corporation during time relevant to plaintiff's claim. Moreover, the fact that Bodo signed the contract on behalf of "Bodo Merchandising," rather than "Paolo Bodo & Co.," indicates a disregard of corporate formalities. Based on the record herein the court finds that Bodo has not made a sufficient showing that the debt on the contract was the corporation's, for which he is not liable.

Bodo also asserts a number of contractual defenses to plaintiff's claims. First, Bodo claims that he never received an invoice for the amount due under the license. Plaintiff, however, has produced a copy of an invoice delivered to Bodo in New York on March 10, 1981 and a duplicate invoice sent to Bodo on May 27, 1981. Exhibits B & C to Affidavit of Michael J. Gould. Second, Bodo claims that plaintiff never delivered the tapes. Under the contract, however, defendants' covenant to pay the license fee is separate from plaintiff's duty to provide the tapes. The contract provides that the tapes were to be delivered to Bodo's agent in New York only after receipt of payment. It is undisputed that no payment was ever made. Moreover, under Paragraph 12 of the contract, defendants' remedy for nondelivery of tapes was to terminate the agreement "on written notice to [plaintiff] not more than one week following [plaintiff's failure to deliver the tapes]." No such notice is even alleged to have been sent.

■ Defendants' final alleged defense is predicated on the *force majeure* clause in paragraph 17 of the license agreement.[4]

---

3. Bodo merely assumes that Italian law determines his liability in this action without addressing the choice of law question. As a federal court sitting in a diversity action, this court is bound to apply the choice of law rules of the state in which the action was brought, *Klaxon Co. v. Stentor Electric Manufacturing Co. of North America,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), in this case New York. Under New York's "paramount interest" test, " 'the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.' " *Hunter v. Greene,* 734 F.2d 896, 899 (2d Cir. 1984) (quoting *Intercontinental Planning Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 382, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 582 (1969)). In this case, the plaintiff is a New York corporation, the negotiations for the license were conducted

in New York, the contract was signed in New York, the tapes were to be delivered to defendants' agents in New York, payment was to be sent to plaintiff in New York before delivery of the tapes and the licensing agreement specifies at paragraph 28 that it shall be governed by the laws of New York, *see CBS, Inc. (CBS Records Division) v. Tucker,* 412 F.Supp. 1222, 1226 n. 5 (S.D.N.Y.1976) (New York conflict of law rules "give great deference" to a choice of law provision in the contract). Under these circumstances, New York law applies in considering the merits of plaintiff's claims, even though defendants are Italian residents and the territory for the license was in Italy.

4. Paragraph 17 provides, in part:
  In the event Distributor is prevented from producing, syndicating or making timely delivery of the Programs as herein provided, or

Defendants contend that they were prevented by the Government of Italy from performing in this case. Defendants contend that Bodo "personally requested authorization every 2 or 3 months from the [Italian] Ministry of Trade to import the programs subject of the aforementioned license agreement, and this authorization was not granted. This request was made by Mr. Bodo at least 3 times with the same negative result." Affidavit of James D. Noel, III at ¶ 9. The court does not find this defense meritorious. The *force majeure* clause provides:

> ... if the prevention occasioned by such condition should continue for thirty or more consecutive days, either Distributor or Station may terminate this Agreement without further liability upon written notice to the other not later than seven days following such thirty day period, and the license fees shall be prorated to the day of the termination.

Bodo never gave plaintiff such notice. Accordingly, defendants cannot rely on the *force majeure* clause.

## CONCLUSION

This court had sufficient jurisdiction over the defendants to enter a default judgment. Defendants' motion to vacate is untimely. In addition, defendants have failed to disclose a *prima facie* defense or otherwise demonstrate exceptional circumstances. Accordingly, defendants' motion to vacate the default judgment herein is denied in all respects.

if the Broadcasting operation of Station is interrupted to the extent that Station is prevented from telecasting the Programs, by reason of an act of God, war, strike, riot, labor dispute, natural disaster, order or decree of any governmental agency or tribunal, or any other reason of a similar nature beyond the control of Distributor or Station, as the case may be, the performance of the obligations specified in this agreement shall be suspended during the period of prevention occasioned by the existence of such condition.