PARK CORPORATION, a Nevada corporation and Park Corporation a/k/a Charleston Ordinance Center, Appellees,

v.

LEXINGTON INSURANCE COMPANY, Appellant,

and

United States Fidelity & Guaranty Company and Pinetop Insurance Company, Defendants.

No. 86–1061.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 13, 1986.

Decided March 3, 1987.

respectively. One policy issued by Pine Top Insurance ("Pine Top") provided second tier excess liability coverage of $5 million to Park. Lexington, the third insurer, issued a policy providing Park with third tier excess liability coverage of $10 million.

When the personal injury suit was filed against Park, USF & G agreed to defend against the plaintiff's claim for compensatory damages but refused to defend against the plaintiff's claim for punitive and exemplary damages. The compensatory damages claim resulted in a verdict for the personal injury plaintiff of $6 million. Park entered into a settlement of the punitive and exemplary damages claim with the plaintiff. In exchange for the plaintiff's covenant not to sue for punitive or exemplary damages, Park agreed to pay the plaintiff a lump sum of $100,000 plus $1,000 per month for the rest of his life. Park estimates the total value of this structured settlement to be about $500,000.

Park filed suit against the three insurers seeking the following relief: (1) a declaration that the insurance policies issued by the three insurers provided coverage to Park for the punitive and exemplary damages claim of the plaintiff in the personal injury suit; and (2) judgment against the three insurers in an amount sufficient to reimburse Park for its expenses and settlement obligations arising out of the punitive and exemplary damages claim. USF & G and Pine Top answered Park's complaint. Lexington, however, did not respond to the complaint, although it was served with process. Accordingly, pursuant to Park's motion, the district court entered a default judgment against Lexington in the amount of $429,066.95 on July 26, 1985. Lexington learned of the default judgment on December 5, 1985 and moved the district court for relief from the judgment on December 20, pursuant to Fed.R.Civ.P. 60(b)(1) and (6). The grounds for Lexington's motion were that the default judgment had resulted from Lexington's mistake, inadvertence, surprise or excusable neglect, or from other reasons justifying relief from the judgment. The district court denied Lexington's motion.

In reviewing the district court's denial of Lexington's motions for relief from the de-

Victor A. Barone (Charles E. Hurt, Hurt & Carrico, Charleston, W.Va., on brief), for appellant.

James M. Sturgeon, Jr. (Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, W.Va., on brief), for appellees.

Before ERVIN and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

ERVIN, Circuit Judge:

Defendant Lexington Insurance Company ("Lexington") appeals from the district court's denial of its motion for relief from a default judgment under Fed.R.Civ.P. 60(b). Finding no abuse of discretion in the proceedings below, we affirm the district court's denial of Lexington's motion.

Lexington was one of three insurance companies providing insurance coverage to Park Corporation ("Park"), the plaintiff in this case, at the time that Park was sued in a personal injury action in Missouri. At the time of the personal injury suit, Park was covered by two policies of insurance issued by United States Fidelity & Guaranty Company ("USF & G"), which provided $300,000 primary liability coverage and $5 million first tier excess liability coverage,

fault judgment, we are mindful that "[t]he disposition of motions under Rule 60(b) ordinarily is a matter within the discretion of the district court which will not be disturbed on appeal absent a showing of abuse of that discretion." *Werner v. Carbo,* 731 F.2d 204, 206 (4th Cir.1984). *Accord Square Construction Co. v. Washington Metropolitan Area Transit Authority,* 657 F.2d 68, 71 (4th Cir.1981); *Central Operating Co. v. Utility Workers of America,* 491 F.2d 245, 252 (4th Cir. 1974). As we have stated in previous cases, in order to obtain relief from a judgment under Rule 60(b), a moving party must show that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside. If the moving party makes such a showing, he must then satisfy one or more of the six grounds for relief set forth in Rule 60(b) in order to obtain relief from the judgment. *See, e.g., Werner,* 731 F.2d at 206–07; *Compton v. Alton Steamship Co.,* 608 F.2d 96, 102 (4th Cir.1979).

In this case, there is no question that Lexington's motion for relief from the default judgment was timely. All motions under Rule 60(b) must be made within a reasonable time, and motions under Rule 60(b)(1) must be made within one year of the date of entry of the judgment from which relief is sought. In this case, Lexington filed its motion for relief under Rule 60(b) within five months of the date the default judgment was entered and within fifteen days of the date that it learned of the judgment.

It is equally clear to us that Lexington could assert a meritorious defense to Park's claims. Lexington is a third tier excess liability insurer for Park. The underlying insurance coverage provided to Park by USF & G and Pine Top amounts to a total of $10.3 million of coverage. Park's total liability from the personal injury action amounted to only $6.5 million; thus, as Lexington points out, Park has not incurred sufficient losses to exhaust the total of the first and second tier liability coverage provided by USF & G and Pine Top. Lexington contends that as Park's third tier excess liability insurer, it cannot be held liable for any part of the losses Park sustained in the personal injury suit until the underlying insurance coverage provided by USF & G and Pine Top has been exhausted. This would have been a meritorious defense if Lexington had asserted it in a timely fashion.

The question whether Park would be unfairly prejudiced by having the default judgment against Lexington set aside is less clear. In its brief, Park pointed to no possible prejudice that could result from having the judgment set aside. At oral argument, however, counsel for Park stated that Park would be prejudiced if the judgment against Lexington were vacated. Park's counsel stated that Pine Top has become insolvent and gone into receivership; thus, if the default judgment against Lexington were set aside, it would be difficult for Park to recover its losses resulting from the personal injury suit from the remaining insurers.

The most compelling reason, however, why we must affirm the district court's denial of Lexington's motion to set aside the default judgment is that Lexington has failed to demonstrate any of the grounds for relief set forth in Rule 60(b). Although Lexington claims it is entitled to relief under Rule 60(b)(1) and (6), we must agree with the district court that Lexington has not specified any facts or circumstances that would justify relief under either of those sections.

▮ In order to obtain relief from a judgment under Rule 60(b)(1), a party must show the existence of mistake, inadvertence, surprise or excusable neglect as a ground for relief. As we have stated, a party seeking relief from a default judgment under Rule 60(b)(1) must show not only that he has a meritorious defense, but also "that he had an acceptable excuse for lapsing into default...." *Central Operating Co.,* 491 F.2d at 252; *see also* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2858, at 170 (1973) (party seeking relief from a judgment under Rule 60(b)(1) "must make some showing of why he was justified in failing to avoid mistake or inadvertence"). In this case, Lexington is not entitled to relief from the default judgment under Rule 60(b)(1) because it

has failed to offer an acceptable excuse, or any excuse at all, for its failure to respond to Park's complaint.

In support of its motion for relief under Rule 60(b), Lexington submitted only the affidavit of Rachel Rivlin, Lexington's vice president and associate general counsel. Rivlin's affidavit acknowledged that Park's summons and complaint were received in Lexington's mail room on May 20, 1985, and that a Lexington employee signed the postal return receipt for them. Thereafter, the summons and complaint disappeared; after conducting a search of its files and records, Lexington was unable to find any record of its having received the process. Lexington could not explain the disappearance of the summons and complaint. The Rivlin affidavit stated only that "it appears that the complaint and process in this action never reached the claims department and was, therefore, never brought to the attention of any of the claims people of Lexington Insurance Company so that the matter could be referred to an attorney and an answer filed...."

The unexplained disappearance of the summons and complaint from Lexington's mail room does not constitute grounds for relief from the default judgment under Rule 60(b)(1). Because Lexington could give no reason for the loss of the complaint, the district court could not determine whether it had an acceptable excuse for lapsing into default. In the absence of any acceptable excuse for Lexington's default, the district court did not abuse its discretion in determining that Lexington had failed to demonstrate any mistake, inadvertence, surprise or excusable neglect that would justify relief from the default judgment under Rule 60(b)(1). Indeed, to hold otherwise would be to allow defaulting defendants to escape the consequences of their inaction simply by asserting that the legal process to which they failed to respond was lost.

Lexington's claim that it is entitled to relief from the default judgment under Rule 60(b)(6) is equally without merit. Rule 60(b)(6) authorizes relief from judgments for any reason justifying relief other than those reasons set forth in Rule 60(b)(1) through (5). As grounds for relief

under Rule 60(b)(6), Lexington claims that the default judgment entered against it is unconscionable and has no basis in law or fact. In support of this contention, Lexington reiterates its argument that as Park's third tier excess liability insurer, it cannot be liable for Park's losses until the underlying insurance coverage provided by USF & G and Pine Top has been exhausted.

■ As noted previously, Lexington's claim that Park must exhaust the insurance coverage provided by USF & G and Pine Top before seeking recovery from Lexington would have provided Lexington with a meritorious defense if it had been asserted in a timely fashion. As we have consistently stated, however, the existence of a meritorious defense is not, by itself, a sufficient basis for relief under Rule 60(b). Rather, in order to qualify for relief under Rule 60(b), a party must demonstrate both the existence of a meritorious defense *and* the existence of any of the grounds for relief set forth in subsections (1) through (6). *See, e.g., Werner,* 731 F.2d at 207; *Compton,* 608 F.2d at 102. With respect to its claim for relief under Rule 60(b)(6), Lexington has done nothing more than reiterate the existence of a meritorious defense. Accordingly, Lexington has failed to demonstrate that there is any other reason justifying relief from the default judgment within the meaning of Rule 60(b)(6). In view of Lexington's failure to demonstrate any of the grounds for relief specified in Rule 60(b), we conclude that the district court did not abuse its discretion in denying Lexington's motion for relief from the default judgment.

The decision of the district court is affirmed.

*AFFIRMED.*

HAYNSWORTH, Senior Circuit Judge, concurring:

I concur in the result reached by the panel majority in this case, but I write separately because the majority's announced standard is too stringent.

An unexplained loss of a summons and complaint may provide the best possible excuse for failing to file an answer. The unexplained loss shows the party's neglect,

but the question under Rule 60(b)(1) is whether that neglect was excusable or inexcusable. When a casualty insurer maintains adequate internal controls designed to capture and record incoming legal papers and to get them to the responsible official for an appropriate response, the district court should not deny Rule 60(b) relief simply because the party cannot explain how the particular papers were lost. *Cf. Davis v. Safeway Stores, Inc.,* 532 F.2d 489, 490 (5th Cir.1976); *Greenspun v. Bogan,* 492 F.2d 375, 382–83 (1st Cir.1974).

The district court did not abuse its discretion in denying relief in this case. Lexington failed to show any internal controls for the receipt and processing of legal papers except the existence of a log for incoming registered and certified mail. That log did not reflect receipt of the summons and complaint in this case, although Lexington does acknowledge that they were received in its mail room. Lexington offered no evidence of procedures in the mail room by which the person signing the receipt for the registered or certified mail insures that the papers received in the mail room are recorded on the log and transmitted to the appropriate legal or claims department. *See Greenspun,* 492 F.2d at 383.

The affidavit of Lexington's vice president and associate general counsel indicates that Lexington was unaware of the underlying personal injury claim or lawsuit against Park. There was evidence, however, that on three occasions a letter of general reference to the personal injury case was sent to Lexington. The loss of those letters aggravates the appearance of neglect and tends to confirm the inadequacy of Lexington's internal controls.

The best of systems sometimes suffers an occasional breakdown. When it does, the neglect should be treated as excusable, but sloppy handling of papers by which legal actions are commenced is inexcusable. In this case, Rule 60(b) relief was properly denied not because of the loss of the papers and not because the loss was unexplained but because Lexington made no showing that it had in place reasonable internal controls designed to prevent or discover such losses.