**UNITED STATES**

v.

**WARSAW ELEVATOR CO. et al.**

**No. 277, Docket 23058.**

United States Court of Appeals,
Second Circuit.

Argued May 7, 1954.

Decided June 1, 1954.

———◆———

Cornelius J. Peck, Atty., Dept. of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., and John O. Henderson, U. S. Atty. for Western Dist. of New York, Buffalo, N. Y., on the brief), for appellant.

Donald Havens, New York City (Haight, Deming, Gardner, Poor & Havens and John C. Mundt, Jr., New York City, on the brief), for appellees.

Before CLARK, FRANK, and MEDINA, Circuit Judges.

518

CLARK, Circuit Judge.

Early in 1951, Warsaw Elevator Company, now the debtor in arrangement proceedings in the court below, entered into a defense production contract with the United States for the manufacture and special packaging of leg hinges and screws for 60 and 80 millimeter mortars. The contract contained provisions for its termination in the event of failure of performance by the contractor and further provided, Article 11(c):

> "(c) In the event the Government terminates this contract in whole or in part as provided in paragraph (a) of this clause, the Government may procure, upon such terms and in such manner as the Contracting Officer may deem appropriate, supplies or services similar to those so terminated, and the Contractor shall be liable to the Government for any excess costs for such similar supplies or services, *Provided*, That the Contractor shall continue the performance of this contract to the extent not terminated under the provisions of this clause."

Shortly thereafter Warsaw experienced financial difficulties and defaulted on its contract. Thereupon the government terminated the contract and, having obtained bids, relet it to the lowest bidder, Bearing Appliance Company of Philadelphia, Pennsylvania, but at a higher price. In due course the government presented its claim in the arrangement proceedings to recover the difference and now appeals from the district court's disallowance of its claim.

■■■ The debtor's receiver, Carr, makes several objections to allowance which will be discussed seriatim. First he urges that Bearing was not a "manufacturer" or "regular dealer" within the meaning of the Walsh-Healey Act, 41 U.S.C. § 35, and that the relet contract was accordingly illegal. But even if we assume that the contrary decision of the government procurement officers is judicially reviewable and further assume noncompliance with the Act, we must hold nevertheless that this does not affect the issues here. The Walsh-Healey Act is intended to regulate governmental conduct in entering into contracts. It is a self-imposed restraint, a matter of internal housekeeping. It was never intended to confer enforceable rights on private parties contracting under its aegis. Perkins v. Lukens Steel Co., 310 U.S. 113, 127–129, 60 S.Ct. 869, 84 L.Ed. 1108; and see also Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 507, 508, 63 S.Ct. 339, 87 L.Ed. 424. Even if Bearing was not a suitable bidder within its terms, the debtor cannot rely on this disqualification to avoid liability.

■■■ Next the receiver asserts that certain variations in detail between the Warsaw and Bearing contracts serve to make the latter an entirely new undertaking, rather than the reletting contemplated by Article 11(c) supra, or that in any event the deviations account completely for the difference in price. The unsoundness of the former contention appears from the face of the two contracts; for it is manifest that appellant merely set out to procure these items which Warsaw had failed to produce. As for the effect of the variations on price, the receiver has equally failed to make out a case. Under the procedure accepted by Warsaw in its contract, appellant was to "procure, upon such terms and in such manner as the Contracting Officer may deem appropriate, supplies or services similar to those so terminated." This not only contemplated some variation from the original contract, but vested a broad discretion in the Contracting Officer. On the record before us there is no basis for finding that he transgressed the limits thus established.

■■■ The situation here presented is unlike the usual case of proving damages for breach of contract by showing the cost of substituted performance, where the burden is naturally on the claimant to show that the work is the same. Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130, 131, 135. Thus in the Doehler case the contract

provided merely that, in the event of termination by the government, "the Government may purchase similar materials or supplies in the open market or secure the manufacture and delivery of the materials and supplies by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby," whereas here Warsaw has expressly consented to "such terms" and "such manner" of completion as the Contracting Officer may deem appropriate. In the ordinary course of reletting a contract it is hardly strange that such details as the F. O. B. shipping point and the schedule of deliveries will be altered. If there is increased cost from such natural, if not unavoidable, variances, that is surely within the reasonable expectation of the contracting parties. Under such a contract, liability for the loss the promisor has caused should not be avoided except upon its showing of an abuse of the discretion it has granted and some new obligations in the relet contract going beyond the reasonable latitude accorded the promisee. So Warsaw had agreed to the procurement of merely "similar" supplies, thus pointing to the possibility of minor adjustments in the detail of armament specifications of the kind seemingly inevitable in a program of military procurement and perhaps as likely to lower as to raise costs. Having granted these wide powers to the government on its default, it must take the burden of showing that the variations actually adopted by the government Contracting Officer have caused unreasonable expense. In addition it should show the amount of such unjustified expenditure; a holding that its entire liability is expunged is to the last degree inequitable.

■ Moreover, the claim presented in the arrangement proceedings was in due form and valid on its face. This made out a prima facie case for its allowance. Bankruptcy Act § 57d, 11 U.S.C. § 93(d); Whitney v. Dresser, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584; 3 Collier on Bankruptcy ¶ 57.13 (14th Ed. 1941) and cases cited. To support his objection, the receiver must go forward with his evidence. As it is, he has totally failed to show that the increased cost is traceable to contract differences.

■ Finally, the receiver asserts that the Bearing contract was subject to the Renegotiation Act of 1951, 50 U.S.C. App. §§ 1211–1223, and that appellant must account for sums which might be recouped thereunder. The short answer to this contention is that the Renegotiation Act creates a statutory, not a contractual, relationship. True, the Bearing contract, as was required, made reference to the Act; but the Act would apply in the absence of such a reference. And the impact of renegotiation is calculated without relation to the terms of any individual contract. It falls on the entire profits realized from the government over an entire fiscal year. It is far closer to a tax or a conscription of property than to a condition of an individual contract, see Lichter v. United States, 334 U.S. 742, 754–755, 68 S.Ct. 1294, 92 L.Ed. 1694; and it cannot be deemed a reduction in the Bearing contract price such as would aid the debtor here.

Accordingly the claim below was well founded; and in the absence of a showing of adequate objection, it must be allowed in the amount of the additional cost for completion of the work.

Reversed and remanded for allowance of the claim.