NATIONAL WOOD PRODUCTS, Inc.
v.
The UNITED STATES.
No. 493-53.

United States Court of Claims.

Dec. 5, 1956.

Ryan deGraffenreid, Tuscaloosa, Ala., for plaintiff, William Edward deGraffenreid, Tuscaloosa, Ala., was on the briefs.

Kathryn H. Baldwin, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant, Benton C. Tolley, Jr., Washington, D. C., was on the brief.

Before JONES, Chief Judge, and MIDDLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff had a contract with the Department of the Army to manufacture 250,000 folding canvas cots. It was late in its deliveries, and the Government terminated the contract as to 98,000 of the cots, and obtained them from another manufacturer. The Government charged the plaintiff with the excess costs of obtaining the 98,000 cots from the other manufacturer, as it had the right to do under the contract, and deducted $33,-

133.80 from the money otherwise due the plaintiff for the cots that the plaintiff did manufacture and deliver.

The plaintiff claims that, in the circumstances, the Government had no right to charge it with any excess costs of obtaining the 98,000 cots, and claims, in the alternative, that in any event the Government charged it more than the excess costs actually amounted to.

When the Government invited bids for the contract which the plaintiff got, it advised bidders that, although the Government would take delivery at the factory of the contractor, it intended to cause the cots to be transported to certain designated Army stations, and would take into consideration the cost of that transportation in determining which bid would be most advantageous to the Government. The designated stations were in Georgia, Ohio, Virginia and New York. The plaintiff's factory was in Mississippi. The plaintiff's bid price at its factory was $3.62 per cot, and the Government, considering that price, and the costs of transportation, awarded the contract to the plaintiff.

When the Government terminated the plaintiff's contract as to the 98,000 cots, it concluded that it wanted the 98,000 cots manufactured by the new contractor transported only to the Ohio and Georgia stations. In its invitation for bids for the new contract, it again advised the bidders that transportation costs would be considered in determining which bid was most advantageous to the Government. On that basis it awarded the new contract to a factory in Granville, New York, whose bid was $3.94 per cot.

The plaintiff says that the new contract should have been awarded to a California factory whose bid was $3.25 per cot, and that since that figure was less than the $3.62 figure of the plaintiff's contract, there would have been no excess costs to charge against the plaintiff.

 There is no merit in this contention of the plaintiff. If the contract had been given to the California factory at its low unit price, the additional cost of

the transportation from California to Georgia and Ohio would have made the cots cost more, delivered to the Army stations where they were wanted, than they would have cost if bought, as they were, from the New York factory. The Government, under the express terms of the invitations for bids for both the original and the substituted contract, made plain the basis on which it would award the contracts.

After the new contract was awarded to the New York factory, the Government decided that it would have the 98,000 cots transported, not to the Ohio and Georgia stations, where it intended to have them taken when it invited bids, but to Schenectady, New York and New Cumberland, Pennsylvania. Since these stations were much nearer to the Granville, New York, factory which had the new contract, the transportation costs and the total expense to the Government of acquiring the cots was considerably less than it would have been if they had been transported to the Ohio and Georgia Stations.

In charging the plaintiff with the excess costs resulting to the Government from the plaintiff's default, and the consequent necessity of acquiring the cots from another manufacturer, the Government at first set the figure at $44,635.90, which represented $33,133.80 of additional factory costs, plus $11,502.10 which represented the amount by which the cost of the transportation from Granville, New York, to the then intended destinations in Ohio and Georgia exceeded the cost of transportation from the plaintiff's factory in Columbus, Mississippi, to those stations. When the Government decided to have the cots transported, not to the Ohio and Georgia stations, but to the nearby stations in New York and Pennsylvania, it removed the $11,502.10 from its charge, leaving only the $33,133.-80 excess factory cost. It collected this amount from plaintiff.

In fact the transportation to the nearby points in New York and Pennsylvania cost the Government much less than it would have cost to have them transported

from the Columbus, Mississippi, plant of the plaintiff to their actual destinations in New York and Pennsylvania. The plaintiff says that this saving should be offset against the excess factory cost with which it has been charged.

We think the plaintiff is right. The contract provisions and the notice given in the invitations for bids show that the Government was concerned, not merely with the factory costs, but the total costs of getting the cots to the Army stations where they were needed. When those costs bade fair to include some excess transportation costs, the Government charged the plaintiff with that excess. When it turned out that there was a saving in transportation costs, the plaintiff, by the same token, should have been credited with that saving. It should have been charged only with $8,878.15, which was the Government's actual excess cost. Giving the Government credit for the amount of its counterclaim, $1,868.40, it owes the plaintiff $22,388.23. A judgment for the plaintiff for that amount will be entered.

It is so ordered.

JONES, Chief Judge, and LITTLETON, Judge, concur.

LARAMORE, Judge (dissenting).

I respectfully dissent.

As stated by plaintiff in its original brief, "the sole question presented by this case is whether or not the Government made a proper repurchase as to the 98,000 cots in default."

Plaintiff then argues that the relet contract should have been awarded to a California factory as the lowest responsible bidder.

This court, in the majority opinion, rejected this contention, but says the Government saved freight costs and the savings should inure to the benefit of the plaintiff.

The stipulation entered into after argument shows that the difference in freight costs was a comparison between costs of cots manufactured in Granville, New York, shipped to Schenectady, New York, and New Cumberland, Pennsylvania, and cots manufactured in Columbus, Mississippi, and shipped to Schenectady and New Cumberland.

I believe it cannot be said with certainty that the Government saved in costs because the goods were shipped to a closer destination point (Schenectady, New York, and New Cumberland, Pennsylvania). To prove a savings on transportation costs, plaintiff must show that the Government's freight costs on the full 250,000 cots were less than they would have been had there been no default. In other words, deliveries undoubtedly were shifted due to the default, and there is no showing what the Government would have done with the cots had they been manufactured and delivered under the original contract. It is entirely possible that by reason of shipping to New York and Pennsylvania, greater freight costs were incurred on the balance of the cots manufactured under the reinstated contract. At least the evidence does not disclose otherwise. Since the burden is on the plaintiff to prove a savings, I believe it must fail.

At the time the contracts were entered into there was no assurance that the cots would go to any particular place. Nor is there any assurance now that the Government would have shipped these cots from Columbus, Mississippi to New York and Pennsylvania, had plaintiff performed as required. Inasmuch as there were no preestablished destinations for these cots, it must be assumed they were shipped to places where storage space was available or where the cots were needed. It must also be assumed that the changes in destination were also caused by plaintiff's default. Therefore, I can see no basis upon which plaintiff can claim a "saving" by the Government in transportation costs.

Item I of each invitation provided:

"The contract shall be awarded to that responsible bidder whose bid, conforming to the invitation for bids, will be most

advantageous to the Government, price and other factors considered."

This created an obligation to select a responsible bidder whose bid was most advantageous to the Government. This was the Telescope Folding Furniture Company, Inc., as conceded by plaintiff.

The repurchase of the 98,000 cots was made under the default clause of plaintiff's contract which provides that "In the event the Government terminates this contract * * *, the Government may procure, upon such termination and in such manner as the contracting officer may deem appropriate * * *, and the contractor shall be liable to the Government for any excess costs for such similar supplies or services: * * *."

"Excess costs" mentioned above means the excess costs occasioned by the Government in obtaining the defaulted cots by a contract, which like the original contract was most advantageous to the Government.

The above provision vested in the contracting officer a discretion. Transportation costs were the sole responsibility of the defendant and consideration by the Government of those costs in evaluating bids, and the use of tentative destinations for this purpose, in the absence of determined ultimate destinations, was not an abuse of that discretion. The provisions of the reletting invitation expressly fixed the bidder's location as the point of origin for the repurchased supplies, and requires that bids be evaluated on the basis of transportation costs from such bidder's origin point to the named tentative destination point. These provisions govern the assessment of excess costs in this case, and Columbus, Mississippi, as a location, did not and could not enter into the evaluation of the reletting bids.

To say that the Government should have waited until the ultimate destinations for the cots and the actual transportation costs were known is without merit. The Government could procure the defaulted cots in such manner and upon such terms and conditions as it deemed appropriate and charge plaintiff the ex-

cess costs. At the time these contracts were entered into, there was no assurance that the cots would go to any particular place. The Government had no way of knowing where the need for a particular shipment might be, nor is there any way of knowing where the cots woud have been shipped had plaintiff not defaulted. Therefore the ultimate destinations to which defendant shipped the cots have no bearing upon the amount of excess costs assessed, and this court cannot say that the Government saved costs for which the plaintiff is entitled to benefit.

This case falls squarely within the language of the United States Court of Appeals in the case of United States v. Warsaw Elevator Co., 2 Cir., 213 F.2d 517, 518–519, wherein the court said:

"The situation here presented is unlike the usual case of proving damages for breach of contract by showing the cost of substituted performance, where the burden is naturally on the claimant to show that the work is the same. * * * here Warsaw has expressly consented to 'such terms' and 'such manner' of completion as the Contracting Officer may deem appropriate. In the ordinary course of reletting a contract it is hardly strange that such details as the F. O. B. shipping point and the schedule of deliveries will be altered. If there is increased cost from such natural, if not unavoidable, variances, that is surely within the reasonable expectation of the contracting parties. Under such a contract, liability for the loss the promisor has caused should not be avoided except upon its showing of an abuse of the discretion it has granted and some new obligations in the relet contract going beyond the reasonable latitude accorded the promisee."

In the case at bar the reletting contract was substantially the same as the original contract. The f. o. b. origin basis was the same in the reletting as in the original contract. The increased cost

was natural and unavoidable and there is no showing of an abuse of discretion.

Therefore, since this Court has found that the award of the repurchase contract was proper, I believe the Government could properly assess against plaintiff as "excess costs" the difference between the two contracts. Goldberg v. United States, 103 Ct.Cl. 237; Doehler Metal Furniture Co., Inc., v. United States, 2 Cir., 149 F.2d 130.

WHITAKER, Judge (dissenting).

I agree with Judge LARAMORE, that the defendant purchased the cots f. o. b. factory, and that it was no concern of the maker or of the plaintiff what it did with them.

Transportation costs have nothing to do with the "excess costs" incurred by the defendant as the result of plaintiff's default. The defendant never represented that it intended to ship the cots to any particular place. Transportation costs were considered only for the purpose of evaluating bids.

I agree with Judge LARAMORE that plaintiff is not entitled to the deduction allowed it by the majority.

Solomon S. LEVADI

v.

The UNITED STATES.

No. 431-55.

United States Court of Claims.

Dec. 5, 1956.

Meyer Goldberg, Chicago, Ill., for plaintiff. Leonard L. Levin, Chicago, Ill., was on the brief.

John R. Franklin, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This is another case involving the proper application of the statute of lim-