**GENERAL SHIP CONTRACTING CORP., Plaintiff,**

**v.**

**UNITED STATES of America, and its Agency, U. S. Naval Supply Depot, Bayonne, New Jersey, Defendants.**

**Civ. A. No. 1068-61.**

United States District Court D. New Jersey.

June 8, 1962.

Stephen Mongiello, Hoboken, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by Richard A. Levin, Asst. U. S. Atty., for the Government.

WORTENDYKE, District Judge.

On March 21, 1962 the defendant, United States, and the U.S. Naval Supply Depot, Bayonne, New Jersey, the two co-defendants in this action, noticed a motion to dismiss as to the U.S. Naval Supply Depot, Bayonne, New Jersey, and to strike the plaintiff's demand for a jury trial. The latter motion was based upon 28 U.S.C.A. § 2402.

Upon the adjourned return date of these motions, a further motion for summary judgment by the defendants was also heard. The motion seeking to dismiss as to the defendant U.S. Naval Supply Depot, Bayonne, New Jersey, was consented to by the plaintiff, and the request to strike the demand for jury trial was granted by the Court.

Decision upon the motion for summary judgment was reserved and is disposed of as hereinafter indicated. On this motion, the United States relies upon the whole record of the proceedings had before the Navy Contract Appeals Panel of the Armed Services Board of Contract Appeals (Board) which is on file in the case. The plaintiff contests the right of the United States to rely upon the record before the administrative tribunal, and seeks a trial *de novo*, citing, in support of its position, Jordan v. United Insurance Company of America, 1961, 110 U.S.App.D.C. 112, 289 F.2d 778. In the cited case, the narrow question presented to the Court was whether or not it was proper for the appellee (plaintiff) to have had a trial *de novo* in the Federal District Court; the appellant contending that it should have been limited to the administrative record. The Court held that under the facts of that case it was proper for plaintiff to have a trial *de novo*, even without specific statutory authorization. However, the distinguishing fact in that case was that plaintiff was not afforded a quasi-judicial administrative hearing, the statute speaking of an investigation which the Court said was not equatable to a due process hearing. The Court agreed with the appellant that plaintiff was not entitled to two due process hearings. In the case at bar, the plaintiff was afforded a quasi-judicial hearing which satisfies the due process of law requirement. The plaintiff is accordingly bound by the administrative record, and this Court is limited to a review thereof. Wells & Wells, Inc. v. United States, D.C.Mo.E.D. 1958, 164 F.Supp. 26; Hoffmann v. United States, 10 Cir. 1960, 276 F.2d 199.

The present record reveals that on September 26, 1958 the plaintiff, a general contractor, entered into contract NBY 16923 with the United States for the exterior painting of water tanks and steel tower structures 53B and 1B at the U.S. Naval Supply Depot, Bayonne, N. J., and on September 29, 1958, plaintiff was awarded contract NBY 16922 in the amount of $5,600 for the painting of the exterior and interior of buildings 21, 31 and 44A at said Depot. The contract for the painting of the tank and tower structures was in the amount of $2,100; thus making the total award $7,700. On November 28, 1958 plaintiff was notified by letter of the termination of both contracts by default, by reason of a bribery attempt on the part of one Paxos, the president of plaintiff, who had signed the contracts on its behalf. On November 14, 1958 the Grand Jury in and for the District of New Jersey returned a true bill charging that Nick Paxos "did knowingly and unlawfully give money to an employee * * * of the United States Department of the Navy * * * [I]n violation of Section 201 of 18 U.S.C." The accused was subsequently found guilty of this charge. On November 5, 1959, and March 11, 1960, the United States awarded completion contracts solely for the completion of the work contemplated by the two contracts entered into with the plaintiff. The aggregate amounts of the completion contracts were $3,940 in excess of the $7,700 obligation which had been assumed by the United States under the contracts previously entered into between it and the plaintiff herein.

A brief history of the procedural aspects of this case shows that plaintiff initially appealed the termination to the Board of Contract Appeals, where his claim for compensation was dismissed as premature, because no claim had been presented to the Contracting Officer. A.S.B.C.A. No. 5419, 60–1 B.C.A. para. 2557. Plaintiff then initiated an action in this Court, (Docket No. C–269–60) presenting a similar claim, which was also dismissed as premature because the plaintiff had not exhausted its administrative remedies. Plaintiff then filed a claim with the Contracting Officer for $6,952.44 which was denied, as was his subsequent appeal to the Armed Services Board of Contract Appeals.

It is the plaintiff's position here that it is entitled to the reasonable value of the work it performed which was in place at the site at the time of termination,

including a fair profit, and, additionally, payment for all property transferred and delivered to the United States, as well as the reasonable rental value of the material and equipment utilized. Plaintiff's argument before the Board was substantially to the same effect, but contained the additional contention that the contract was unjustifiably terminated. The Board held that the loss incurred by the United States for the ultimate completion of the work after default exceeded the original contract price; thus disentitling plaintiff to payment for partial performance.

The plaintiff, before the Board, presented no witnesses, but limited itself, by cross-examination of respondent's sole witness, Gilman, the Senior Civilian Representative at the Bayonne Naval Shipyards, to an attempt to establish that it had substantially completed its obligation under the contracts. Plaintiff introduced into evidence invoices of bills for debts it had incurred pursuant to the work being performed and certain payroll records; plaintiff's position being that proof of partial completion would ipso facto entitle it to payment from the United States. Clause 47(f) of "The Contract" [1] states in part:

"Upon Termination of work pursuant to this clause, the Government * * * shall pay the Contractor the following amounts:

"(1) For work performed which is in place at the site on the effective date of termination * * *: The reasonable value thereof (including in the discretion of the Contracting Officer, a fair profit) * * *

"(2) For all property transferred and delivered to the Government * * *: The reasonable value of such property (without duplication of any amount fixed under paragraph (f) (1) and including in the discretion of the Contracting Officer, a fair profit) * * *

* * * * * *

"(4) The reasonable value or reasonable rental value, as the case may be, of material, equipment, and plant utilized by the Government * * *."

Plaintiff, however, has failed to notice subparagraph (e) of Clause 47, which states:

"In effecting the completion of work under this Clause, the Government may, in addition to all rights otherwise conferred, take possession of and utilize such material, equipment and plant as may be at the site of the work or on order and which the Contracting Officer may deem necessary or useful in facilitating such completion. Upon completion of such work, or so much thereof as is to be completed, the Contracting Officer shall determine the cost to the Government of such completion, which determination shall be final, subject only to appeal under Clause [57]. If the cost of such completion, plus all payments otherwise made to the Contractor, exceeds the contract price, the excess cost shall be charged to the Contractor and the Contractor or his surety, if any, shall pay such amount to the Government upon demand."

The amount for which the Government became obligated under the completion contracts being in excess of its obligation under the original contracts, the United States is not required to pay the Contractor for its work performed, including its costs incurred pursuant thereto and in furtherance thereof. Where a contractor objects to the price of a reprocurement contract he has the burden of proof of making such a showing. See United States v. Warsaw Elevator Co., 2 Cir. 1954, 213 F.2d 517. In the instant case the record is devoid of any such evidence. Parenthetically, it is noted that the record contains a letter dated March 15, 1961, written on

1. "The Contract" refers to NBY 16922, and is equally meant to apply to NBY 16923, para. 7 of which incorporates by reference each of the clauses of NBY 16922, referred to in the course of this opinion.

behalf of the United States Casualty Co. to the Bureau of Yards and Docks, disclosing the fact of payment by the surety for the excess costs which resulted from the termination, and the necessity of awarding reprocurement contracts.

The propriety of the termination for default, the remedy invoked by the United States, is well supported in the record. Copies of the indictment of plaintiff's president, under the provisions of 18 U.S.C. § 201, and of the transcript of the record of trial which resulted in a guilty verdict from the jury, are before the Court.

Clause 55 of the Contract entitled "Gratuities" states:

> "(a) The Government may, by written notice to the Contractor, terminate the right of the Contractor to proceed under this contract if it is found, after notice and hearing, by the Secretary or his duly authorized representative, that gratuities (in the form of entertainment, gifts or otherwise) were offered or given by the Contractor or any agent, or representative of the Contractor, to any officer or employee of the Government with a view toward securing a contract or securing favorable treatment with respect to the awarding or amending, or the making of any determinations with respect to the performing, of such contract * * *."

Although not charged in the complaint, nor reflected in the record before the Board, upon oral argument counsel for plaintiff now apparently argues that General Ship Contracting Company should have been permitted to continue working on the job pending its appeal from the termination, or at least throughout the period prior to receipt of the formal notice of termination. The record refers to a letter dated November 6, 1958 specifically excluding the plaintiff's employees from the Depot; the act of bribery having occurred the preceding day, November 5, 1958.

Clause 57 of the Contract entitled "Disputes" states in the event a question of fact arises under the contract which is not disposed of by agreement, the Chief of the Bureau of Yards and Docks shall decide the issue, reduce his decision to writing, and furnish a copy thereof to the Contractor, who, in turn, has 30 days within which to appeal the decision. This section further provides that pending final decision of the dispute the Contractor "shall proceed diligently with the performance of the contract and in accordance with the decision of the Chief of the Bureau of Yards and Docks." This clause (now 57, formerly clause 6) is referred to in Clause 47, which provides that, in an instance of termination and subsequent completion or partial completion by the United States, the decision by the Contracting Officer as to cost shall be final, subject to an appeal under Clause [57]. The question presented is whether or not Clause 57 applies in its entirety, including the right, if not the duty of the Contractor to continue working pending decision upon his appeal. We think not. The clauses being *in pari materia* must be read together. Clause 47(d) specifically requires the notice of termination to include, *inter alia*, the date upon which termination shall be effective and the extent to which performance of work under the contract shall be terminated. In the instant case the entirety of both contracts was terminated; the effective time was immediately. To construe this contract as authorizing termination, and then permitting the Contractor to continue and perhaps to finish his work pending appeal, would be a totally incongruous construction, and one not warranted by a reasonable interpretation of the language of the contract.

With regard to the barring of the plaintiff from the Depot on November 6, 1958, such a right always inures to one having work performed on one's land, subject only to any legal obligations resulting therefrom. In this case, the termination being justified, plaintiff

has no right to complain of the barring of its employees.

Summary judgment is particularly appropriate in an action to obtain review of an administrative order where the plaintiff has no right to a trial *de novo*. Whether or not the evidence meets the statutory standard is purely a matter of law. 6 Moore, Federal Practice Para. 5617 at p. 2175 (2d ed. 1953). The statutory standard established by 41 U.S.C.A. § 321 permits reversal of the Board only upon a showing that its determination is "*fradu*lent (sic) or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." No such showing has here been made.

The motion of the United States for summary judgment is granted. An order in conformity with the decision herein embodied may be submitted.