800 F.2d 1256
 33 Cont.Cas.Fed. (CCH) 74,607
 SQUARE CONSTRUCTION CO. and La Fera Contracting Co., a joint
venture, Appellants,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellee,
v.
MARYLAND CASUALTY CO.; General Reinsurance Corp.; American
Re-Insurance Corp.; Employers Reinsurance Corp.;
North American Reinsurance Corp., Third
Party Defendants and Fourth
Party Plaintiffs,
v.
Frank RAGONESE; Margaret Ragonese; Joseph La Fera, Sr.;
Joseph La Fera, Jr.; Minnie La Fera; Rose La
Fera, Fourth Party Defendants.
SQUARE CONSTRUCTION CO. and La Fera Contracting Co., a joint
venture, Appellees,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant,
v.
MARYLAND CASUALTY CO.; General Reinsurance Corp.; American
Re-Insurance Corp.; Employers Reinsurance Corp.;
North American Reinsurance Corp., Third
Party Defendants and Fourth
Party Plaintiffs,
v.
Frank RAGONESE; Margaret Ragonese; Joseph La Fera, Sr.;
Joseph La Fera, Jr.; Minnie La Fera; Rose La
Fera, Fourth Party Defendants.
 Nos. 85-1037, 85-1038.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 9, 1985.
Decided Sept. 10, 1986.
 
 Michael L. Thomas, Washington, D.C. (John B. Tacke, Hudson & Creyke, Alexandria, Va., on brief), Kenneth I. Johnson, Washington, D.C. (Lois C. Greisman, Steptoe & Johnson, Washington, D.C., George P. Doss, Jr., Alexandria, Va., Nathan Patz, Baltimore, Md., John H. Johnston, Fairfax, Va., on brief), for appellants/cross-appellees.
 William B. Bircher, Washington, D.C. (Sara E. Lister, Robert L. Polk, Gerard J. Stief, Washington, D.C., on brief), for appellee/cross-appellant.
 Before WIDENER and ERVIN, Circuit Judges, and McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.
 WIDENER, Circuit Judge:
 
 
 1
 These appeals arise out of the Washington Metropolitan Area Transit Authority's (Authority's) termination of a contract with Square Construction Co. and La Fera Contracting Co. (Square/La Fera) for the construction of a portion of the Washington, D.C. Metro subway system. In these appeals, the Authority and Square/La Fera both appeal from portions of the district court's decision upholding a decision by the Army Corps of Engineers Board of Contract Appeals (BCA) in which the BCA assessed certain reprocurement costs against Square/La Fera. We affirm.
 
 
 2
 These appeals constitute only a small portion of the litigation surrounding the Authority's termination of Square/La Fera's contract to build a portion of the Washington, D.C. subway system.[1] The facts surrounding the Authority's termination of the contract are fully set forth in a previous opinion of this court. See Square Constr. Co. v. Washington Metropolitan Area Transit Auth., 657 F.2d 68 (4th Cir.1981). Consequently, we set forth here only those facts relevant to the present appeal which do not appear in our previous opinions.
 
 
 3
 In a previous appeal, we held that the district court correctly affirmed the BCA's ruling that the Authority had properly terminated the Square/La Fera contract for default. See Square Constr. Co. v. Washington Metropolitan Area Transit Auth., 657 F.2d 73, 74 (4th Cir.1981) (per curiam). We also held, however, in a separate opinion, that the Authority, in the course of the BCA's hearing, deliberately and wrongfully withheld a document crucial to Square/La Fera's defense that the Authority's reprocurement of the Square/La Fera contract was unreasonable. See Square Constr. Co. v. Washington Metropolitan Area Transit Auth., 657 F.2d 68, 72-73 (4th Cir.1981). We remanded that case to the district court with instructions to permit appropriate discovery with respect to the document in question, an estimate of reprocurement costs by Bechtel Associates (Bechtel estimate). Id. at 75. We emphasized that the sole questions before the district court on remand were to be: (1) Does the Bechtel estimate in fact exist? and (2) Is the Bechtel estimate an estimate of the cost of reprocurement of the C-7 section of the subway system (the portion of the system for which Square/La Fera had been responsible)? Id. We further instructed the district court that should it answer these questions in the affirmative, it should remand the entire case to the BCA for reconsideration of the question of damages that Square/La Fera might owe to the Authority for the reprocurement of the C-7 section of the subway system. Id. To obviate needless delay and argument, we directed the Authority to
 
 
 4
 forthwith make available to Square/La Fera for inspection and copying not only the Bechtel estimate itself, but also every paper or other record of any description whatsoever associated with or related to the Bechtel estimate in even the slightest way.
 
 
 5
 Id.
 
 
 6
 On remand, the district court found that the Bechtel estimate did exist, and that it was, in fact, an estimate of the reprocurement of the portion of the subway system for which Square/La Fera had been responsible. Square Constr. Co. v. Washington Metropolitan Area Transit Auth., No. 78-788A (E.D.Va. Mar. 29, 1982). Pursuant to the instructions of this court, therefore, the district court then remanded the case back to the BCA for a new hearing on "all issues concerning damages and reprocurement costs." Id. In remanding the case to the BCA, the district court stated that it did not pass on the weight that the BCA must give to the Bechtel estimate and limited the BCA's inquiry on remand to a reconsideration of the quantum decision
 
 
 7
 in light of [the Bechtel estimate] and such other evidence as may be adduced by the parties in addition to that evidence already heard. Whether to rehear evidence already heard would, of course, be in the Board's discretion.
 
 
 8
 Id.
 
 
 9
 On remand, the BCA made several prehearing rulings concerning the evidence that it would consider in the new quantum hearing. In its first pretrial ruling, the BCA ruled that it would incorporate the entire record of the first quantum hearing before the BCA, excluding only those portions to which the BCA might sustain an objection. Square/La Fera objected to this ruling in general and also to the incorporation into the record of the DeLeuw, Cather & Co. estimate of reprocurement costs (DeLeuw estimate) that the BCA had relied on in the first quantum hearing in finding that the Authority's reprocurement was reasonable. The BCA overruled Square/La Fera's objection. In a second prehearing ruling, the BCA denied Square/La Fera's motion in limine for an order requiring the Authority to lay a new foundation for the admission of the DeLeuw estimate.[2]
 
 
 10
 During the prehearing discovery, pursuant to this court's direction, the Authority made available to Square/La Fera all the documents in its possession relating to both the DeLeuw and Bechtel estimates of a reasonable reprocurement cost for the C-7 portion of the subway system. The parties agree that the documents in the Authority's possession relating to both these estimates are not complete. Square/La Fera concedes, however, that the documents the Authority has produced represent every document that is in its files. Square/La Fera, moreover, has not alleged that the Authority has wrongfully withheld documents from the second quantum hearing, stating in its brief that "all the missing backup for the DeLeuw and for the Bechtel estimates has either been lost or destroyed."
 
 
 11
 Having completed the discovery portion of the remand quantum proceeding, the BCA conducted a seven-day hearing on the reasonableness of the Authority's reprocurement of the defaulted Square/La Fera contract. In its decision of April 16, 1984, the BCA held that the Authority had completed the work for which Square/La Fera had been responsible, and therefore was entitled to reimbursement. Appeal of Square Constr. Co., Eng. BCA No. 3841, at 26 (Apr. 16, 1984). The BCA also found that the reprocurement contract the Authority had entered for the completion of Square/La Fera's defaulted contract was substantially similar to Square/La Fera's and that the Authority had timely awarded the reprocurement contract. Id.
 
 
 12
 In more extended discussion, the BCA then discussed Square/La Fera's contentions that the Authority had failed to minimize its reprocurement costs, an allegation which, if sustained, would preclude the Authority from maintaining an action for excess costs before the BCA. The BCA rejected this contention on the ground that Article 1.5 of the General Provisions of the Square/La Fera contract authorized the Authority, in its discretion, to determine the appropriate method of seeking bids on a reprocurement of the contract. Id.[3] Because the BCA found that the Authority decision to reprocure through negotiation rather than formal advertisement was a sound one,[4] the BCA held that the Authority's method of reprocurement was reasonable. Id. at 27.
 
 
 13
 The BCA then considered Square/La Fera's contention that the Authority's estimated cost of the reprocurement contract was unreasonable because it was predicated on the DeLeuw estimate of approximately $19,700,000 when an allegedly more reasonable estimate by Bechtel Associates of only $16,000,000 was available to the Authority at the time it entered into the reprocurement contract. Relying on the testimony of Mr. Seymour Hirsch, an estimator in the Authority's Office of Program Control, the BCA found that the Authority had acted reasonably in rejecting the Bechtel estimate and in adopting the DeLeuw estimate as the official Authority estimate because, in part, Hirsch had subjected both estimates to thorough review and had found the Bechtel estimate to be deficient in several respects. Id. at 29 & 31.[5] Because the BCA found that the Authority's reprocurement price was reasonable, the BCA concluded that the Authority was entitled to recover from Square/La Fera excess reprocurement costs in the amount of $4,225,304.52 and liquidated damages in the amount of $220,500, for a total award of $4,445,804.52.[6] Id. at 33. The BCA also found that the Authority was entitled to prejudgment interest at six percent per annum, dating from the date of reprocurement to the date of payment. Id.
 
 
 14
 Square/La Fera then sought to attack the BCA's award through judicial review of the BCA's decision in the district court, claiming that the BCA's decision failed to meet the contract standards because it was arbitrary, capricious, erroneous as a matter of law, and unsupported by substantial evidence.[7] Square/La Fera also claimed that the BCA hearing failed to comport with the orders of the district court and of this court on remand. The Authority counterclaimed against Square/La Fera for recovery of the award that the BCA had given the Authority. The Authority also filed a third-party complaint against Square/La Fera's sureties on the defaulted contract.
 
 
 15
 In the action for judicial review of the BCA's second quantum determination, Square/La Fera's sureties, as third-party defendants in the action, moved for dismissal of the Authority's third-party complaint on the ground that the action was barred by the applicable statute of limitations. The district court denied the motion.[8] Subsequently, after hearing cross-motions for summary judgment on the merits the district court granted judgment in favor of the Authority and against Square/La Fera and its sureties, jointly and severally. Specifically, the district court held that the Authority's method of reprocurement by negotiated bidding rather than by formal advertising was reasonably designed to, and did, minimize the excess costs of reprocurement, which is all that the Authority was required to do. The district court also held that the Authority reasonably rejected the Bechtel estimate and that the DeLeuw estimate, on which the Authority had relied, was a reasonable estimate of the cost of the reprocurement of the defaulted Square/La Fera contract. The district court concluded that the DeLeuw estimate was reasonable despite its lack of backup information, which lack merely affected the weight that the BCA might give the estimate, not its overall reasonableness. Finally, the district court held that the BCA incorrectly awarded the Authority prejudgment interest on its award because the second quantum hearing had been occasioned by the Authority's own conduct, thereby precluding the equitable basis for relief in this regard.
 
 
 16
 Square/La Fera appeals from the district court's grant of summary judgment to the Authority in the action for judicial review of the BCA's second quantum decision. Appeal No. 85-1037. The Authority appeals from the district court's denial of prejudgment interest on the BCA's award in the second quantum hearing. Appeal No. 85-1038. As noted previously, we affirm.
 
 
 17
 In its appeal from the district court's affirmance of the BCA's ruling in the second quantum hearing, Square/La Fera raises four issues. First, Square/La Fera argues that the district court's conclusion that the Authority's method of reprocurement was reasonably designed to minimize excess costs is not supported by substantial evidence and is incorrect as a matter of law. Second, Square/La Fera contends that the district court's conclusion that the Authority's reprocurement price was reasonable is not supported by substantial evidence. The third contention is that the BCA proceedings during the second quantum hearing were so lacking in due process as to be arbitrary and capricious. Finally, Square/La Fera contends that under the facts of this case the assessment of excess costs would be a penalty and a forfeiture.
 
 
 18
 Preliminarily, we examine the factual and legal context in which we consider Square/La Fera's contentions in this appeal. In January 1974, the Authority terminated its contract with Square/La Fera for default. This termination was affirmed in this court. This is a review, after remand, of the administrative decision by the BCA that the Authority is entitled to its reprocurement costs.[9]
 
 
 19
 In an administrative proceeding for excess costs, the BCA awards damages based on the Authority's actually incurred cost in reprocuring the contract, so long as the Authority reasonably reprocured. See Marley v. United States, 191 Ct.Cl. 205, 423 F.2d 324, 333 (1970). In effect, a proper reprocurement relieves the Authority of the burden of proving the market value of its damages in a suit for breach of contract. Id. To protect the contractor's pocket from the consequences of an extravagant or improper reprocurement, the courts have held that the BCA must condition its award upon proof that the Authority's reprocurement was reasonably designed to minimize excess costs. Id.
 
 
 20
 In the BCA hearing in this case, the Authority bore the burden of proof as to the reasonability of the excess costs that it sought from Square/La Fera. See id. The parties essentially agree that this burden before the BCA entailed a showing by the Authority that it: (1) actually reprocured essentially identical goods and services; (2) obtained a reasonable reprocurement price; (3) reprocured within a reasonable time after default; and (4) acted to mitigate Square/La Fera's damages. After the second quantum hearing, the BCA concluded that the Authority had met its burden in each regard and awarded the Authority a net award of $2,642,941.31 in excess costs. See n. 6, supra.
 
 
 21
 In the district court's judicial review of the BCA's decision, as a matter of contract, the burden shifted to Square/La Fera to establish that the BCA's determination was fraudulent, arbitrary or capricious, so erroneous as to imply bad faith, unsupported by substantial evidence, or incorrect as a matter of law. See n. 9, supra. The district court upheld the BCA's determination. Consequently, in this appeal from the district court's decision, our task is limited to determining whether or not the district court erred in concluding that the BCA's determination was supported by substantial evidence and was not fraudulent, arbitrary or capricious, nor incorrect as a matter of law. Square/La Fera suggests four grounds upon which the district court erred.
 
 
 22
 In reprocuring the Square/La Fera contract, the Authority utilized a negotiated bidding method of contract procurement rather than the formal advertising method. See n. 4, supra.[10] The BCA held that this was a reasonable method of reprocurement under the circumstances and the district court upheld this determination. On appeal, Square/La Fera contends that this determination was incorrect as a matter of law and fact. Square/La Fera further contends that such error was sufficient to render the Authority's reprocurement of the Square/La Fera contract unreasonable per se. We do not agree.
 
 
 23
 With regard to Square/La Fera's contention that the BCA's conclusion regarding the reasonability of the Authority's reprocurement method was erroneous as a matter of law, Square/La Fera relies primarily on a statute in the Authority's enabling legislation which requires the Authority to procure contracts only through formally advertised bidding, unless the situation fits into one of four enumerated exceptions to the competitive bidding requirement. See Act of Nov. 6, 1966, Pub.L. No. 89-774, Sec. 73, 80 Stat. 1324 (codified at D.C.CODE Sec. 1431 (1973)). If an exception is relied upon, the Authority must affirmatively state in a written document why it is not utilizing the formal advertising method of procuring contracts. Id.[11] Square/La Fera contends that because the Authority did not advertise the reprocurement contract for competitive bids, and also did not state in writing why it was not doing so, the Authority violated the requirements of the competitive bidding statute. Square/La Fera further contends that the Authority's alleged violation of this statutory requirement of formal advertisement of construction contracts constituted conduct that was unreasonable per se, thereby rendering the Authority's reprocurement method unreasonable as a matter of law. Because we find that the Authority did not violate the statute in question, we reject this contention.
 
 
 24
 Technically, a reprocurement is a purchase for the contractor's account and not a new purchase by the government. See R. NASH & J. CIBINIC, FEDERAL PROCUREMENT LAW 1751 (1981). Because the formal advertising requirement is primarily for the protection of the government, see American Smelting Co. v. United States, 259 U.S. 75, 78, 42 S.Ct. 420, 421, 66 L.Ed. 833 (1921), courts have recognized that formal advertising procedures are not required for the reprocurement of a defaulted contract. See, e.g., H & H Mfg. Co. v. United States, 168 Ct.Cl. 873 (1964); Astro-Space Labs., Inc. v. United States, 200 Ct.Cl. 282, 470 F.2d 1003, 1018 (1972); Conti v. United States, 158 F.2d 581, 583 (1st Cir.1946); see also Orlotronics Corp., ASBCA No. 23287, BCA 79-2 (CCH) p 13,912, at 68-296; R. NASH & J. CIBINIC, supra, at 1740, 1751; cf. FPR Sec. 1-8.602-6(b), 41 C.F.R. Sec. 1-8.602-6(b) (1984) (stating that if reprocurement contract is not in excess of original contract, then legal requirements with respect to formal advertising are inapplicable).
 
 
 25
 In its argument on appeal, Square/La Fera attempts to circumvent this principle by distinguishing those cases in which courts or Boards of Contract Appeals have recognized it on the ground that the contracts involved in those cases were supply rather than services contracts. In its attempt to distinguish those cases, Square/La Fera emphasizes the fact that the language in the standard default clause in a supply contract explicitly vests wide discretion in the Contracting Officer to reprocure the defaulted contract in a manner that will best suit the government's needs, whereas the language in the standard default clause in a services contract is not so explicit in this regard.[12] The basis for Square/La Fera's argument is the decision in United States v. Warsaw Elevator Co., 213 F.2d 517, 518-19 (2d Cir.1954), in which the Second Circuit noted the difference in latitude granted to a contracting officer under each default clause as the basis for holding that a particular reprocured contract was substantially similar to the defaulted one. See id. (citing Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 131, 135 (2d Cir.1945)). We find Square/La Fera's distinction unpersuasive.
 
 
 26
 The basis of our conclusion that the competitive advertisement requirement does not apply when the Authority reprocured this defaulted contract, whether it be considered for supplies or services, is not principally that the default clause in either provides the Contracting Officer with sufficient discretion to reprocure by negotiation, which it does. Rather, the primary basis for our conclusion is that the competitive advertisement requirement is primarily for the protection of the Authority, and therefore it is not applicable in the context of a reprocurement, which is for the contractor's, not the Authority's, account. Because we find that the competitive advertisement requirement is not applicable in the reprocurement context present here, as well as because of the language in the contract, we reject Square/La Fera's contention that the Authority's method of reprocurement was unreasonable as a matter of law.
 
 
 27
 Square/La Fera also contends that the Authority's reprocurement was unreasonable as a matter of fact. As previously noted, our review of the BCA's factual determinations concerning issues over which it has jurisdiction is limited to a consideration of whether such determinations are supported by substantial evidence. If the evidence is disputed, as it is in this case, to make a finding contrary to that of the BCA, we would have to find, as the district court would have had to, that the overwhelming weight of the evidence strongly points to a conclusion of fact contrary to that which the BCA had reached. See Laka Tool & Stamping Co. v. United States, 226 Ct.Cl. 83, 639 F.2d 738, 742 (1980) (decided under the Wunderlich Act, 41 U.S.C. Sec. 321).
 
 
 28
 We have examined the BCA's detailed and lengthy findings of fact concerning the steps the Authority undertook to mitigate Square/La Fera's damages during the reprocurement of the defaulted contract and conclude that the finding of the district court, that the BCA's finding that the Authority's method of reprocurement was reasonable as supported by substantial evidence, is without error. Essentially that part of the decision boils down to whether or not the Authority might reasonably reject the Bechtel estimate. The BCA's finding that the rejection was reasonable because of lack of backup and outdated prices is supported by substantial evidence.
 
 
 29
 Square/La Fera next contends that the BCA's conclusion that the reprocurement price was reasonable is not supported by substantial evidence. Once again, we do not agree. In finding that the Authority's reprocurement price was reasonable, the BCA relied primarily on the DeLeuw estimate that the Authority had adopted as its official estimate. Consequently, on appeal, Square/La Fera attacks the reasonability of the DeLeuw estimate. In finding that the DeLeuw estimate was reasonable, the BCA relied primarily on the testimony of Mr. Hirsch, who testified extensively both as to the DeLeuw estimate's reasonableness and the Bechtel estimate's unreasonableness. Although Hirsch's qualifications might have been better, he did have significant experience in the evaluation of large construction contracts, having conducted more than sixty such evaluations in the past. Consequently, we agree with the district court's conclusion that Hirsch's testimony, as supported by the Authority's witness in the second hearing, constitutes substantial evidence in the record to support the Authority's action.
 
 
 30
 Square/La Fera's next point is that the BCA's rulings concerning the presentation of evidence in the second quantum hearing violated due process, thereby rendering the BCA's decision in that hearing arbitrary and capricious.[13] Having carefully reviewed each of Square/La Fera's contentions in this regard, we find that the BCA did not abuse its discretion in admitting the challenged evidence into the record, and its conduct of the hearing did not violate Square/La Fera's right to due process of law. Consequently, we reject this contention as well.
 
 
 31
 Square/La Fera's final contention is that assessment of excess costs would be a penalty and a forfeiture in this case. It is well established that the government may seek to enforce a contractual provision that provides for an award of excess costs in reprocurement. See Marley v. United States, 423 F.2d at 333; R. NASH & J. CIBINIC, supra, at 1725. In a previous appeal, we upheld the Authority's termination of the Square/La Fera contract for default. See Square Constr. Co. v. Washington Metropolitan Area Transit Auth., 657 F.2d 73, 74 (4th Cir.1981) (per curiam). Consequently, Square/La Fera cannot complain of the Authority's contractually authorized efforts to obtain its excess costs for the reprocurement of the Square/La Fera contract, unless the reprocurement is in some way unreasonable. Because we have upheld the BCA's determination that the Authority's reprocurement of the defaulted contract was reasonable, we reject this final contention by Square/La Fera.
 
 
 32
 In a cross appeal, the Authority challenges the district court's denial of prejudgment interest on the Authority's award of excess costs. As the Authority acknowledges, the decision to award prejudgment interest rests in the sound discretion of the district court. Bricklayers Pension Trust Fund v. Taiariol, 671 F.2d 988, 990 (6th Cir.1982). Moreover, we may reverse the exercise of that discretion only for abuse. The district court in this case denied prejudgment interest because it did not believe that equity called for the award of such interest to the Authority because it had been the Authority's conduct in the first quantum hearing that had occasioned the delay of which the Authority complained. The district court's decision was obviously correct. Indeed, the awarding of interest in the circumstances present here would have been more subject to attack than its denial.
 
 
 33
 Finally, there is a question of the taxation of costs and attorneys' fees in this protracted and vexatious litigation. Rule 39 of the Federal Rules of Appellate Procedure provides that costs shall be allowed to the prevailing party in an appeal unless the court otherwise orders. Under this rule, an appellate court has wide discretion in the taxation of costs, which, in our opinion, should be exercised as fully as possible, both by this court and the district court, against the Authority, even though the Authority is a prevailing party in this action. Jones v. Schellenberger, 225 F.2d 784, 795 (7th Cir.1955).
 
 
 34
 As we noted in our previous opinion, see Square Constr. Co. v. Washington Metropolitan Area Transit Auth., 657 F.2d 68, 71-72 (4th Cir.1981), the Authority's action in failing to produce the Bechtel estimate in response to an interrogatory was a deliberate withholding of most relevant evidence which prevented Square/La Fera from fully and fairly presenting its defense. It was misconduct in every sense of the word. It served to prolong this litigation immeasurably and unnecessarily and was persisted in through the previous appeal to this court. Thus, in our view, the Authority should be required to pay all costs and expenses incurred by Square/La Fera in this current appeal, including, but not exclusively, without limitation, all printing expenses for briefs and appendices. As an additional sanction for the Authority's obdurate, obstinate, and vexatious conduct, the Authority is required to pay the attorneys' fees incurred by Square/La Fera in the conduct of this appeal. See Thonen v. Jenkins, 517 F.2d 3, 6 (4th Cir.1975); WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL Sec. 2675, at 288 (1983) (obdurate conduct during course of proceeding may justify court in imposing attorneys' fees on offending party as part of costs of litigation). We are reluctant to impose the payment of all costs, expenses, and attorneys' fees other than those incurred in this court, believing that such matter is better left in the first instance to the district court. See Jones v. Schellenberger, 225 F.2d 784, 795 (7th Cir.1955).
 
 
 35
 Accordingly, the judgment of the district court is affirmed. The case is remanded, however, with instructions that the district court ascertain, and charge the Authority with, the costs, expenses, and attorneys' fees incurred by Square/La Fera and attributable to proceedings in this court in this appeal. See Marston v. Red River Levee and Drainage Dist., 632 F.2d 466, 468 (5th Cir.1980). On remand, the district court should also charge the Authority, absent extraordinary circumstances not apparent to us now, with all costs, expenses, and attorneys' fees incurred by Square/La Fera on account of proceedings in that court from which this appeal was taken.
 
 AFFIRMED AND REMANDED WITH INSTRUCTIONS.[14]
 
 
 [1]
 See, e.g., Square Constr. Co. v. Washington Metropolitan Area Transit Auth., 657 F.2d 73 (4th Cir.1981) (per curiam); Square Constr. Co. v. Washington Metropolitan Area Transit Auth., 657 F.2d 68 (4th Cir.1981); Washington Metropolitan Area Transit Auth. v. Ragonese, 617 F.2d 828 (D.C.Cir.1980)
 
 
 [2]
 Square/La Fera had objected to the reintroduction of the DeLeuw estimate in the second quantum hearing on the ground that the witness who had laid the foundation for the estimate's admission in the first quantum hearing, Donald O'Hearn, former Assistant Director of the Authority's Office of Program Control, had recanted his former testimony at the first quantum hearing, thereby destroying completely his credibility as a foundation witness for the DeLeuw estimate. Upon the BCA's denial of Square/La Fera's motion in limine, Square/La Fera applied to this court for a writ of mandamus on the ground that the BCA was refusing to grant Square/La Fera the new trial that this court had previously mandated. This court denied Square/La Fera's motion as being premature. In re Square Constr. Co., No. 83-1307 (4th Cir. Apr. 18, 1983)
 
 
 [3]
 Article 1.5 of the General Provisions of the Square/La Fera contract provides:
 TERMINATION FOR DEFAULT, DAMAGES FOR DELAY, TIME EXTENSIONS
 (a) If the Contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in this contract, or any extension thereof, or fails to complete said work within such time, the Authority may, by written notice to the Contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Authority may take over the work and prosecute the same to completion, by contract or otherwise, and may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. Whether or not the Contractor's right to proceed with the work is terminated, he and his sureties shall be liable for any damage to the Authority resulting from his refusal or failure to complete the work in the specified time.
 (b) If fixed and agreed liquidated damages are provided in the contract and if the Authority so terminates the Contractor's right to proceed, the resulting damage will consist of such liquidated damages until such reasonable time as may be required for final completion of the work together with any increased costs occasioned the Authority in completing the work.
 (c) If fixed and agreed liquidated damages are provided in the contract and if the Authority does not so terminate the Contractor's right to proceed, the resulting damage will consist of such liquidated damages until the work is completed or accepted.
 * * *
 (f) The rights and remedies of the Authority provided in this clause are in addition to any other rights and remedies provided by law or under this contract.
 
 
 [4]
 Formal advertising is a highly structured contracting method. It is generally accepted that the term means procurement by competitive bids and awards. See G. MONROE, GOVERNMENT CONTRACT LAW MANUAL Sec. 2.22, at 21 (1979). Although the precise requirements of the formal advertising method of procurement may vary between government agencies, the following criteria are exemplary: (1) bidders must be allowed sufficient time to prepare bids; (2) the contract specifications must be sufficiently clear and descriptive to permit full and free competition; (3) there must be a public opening of bids; and (4) the award must be made, by written notice, to the responsible bidder whose bid conforms to the invitation and is otherwise most advantageous to the Government. See id
 Compared to formal advertising, negotiation is much more flexible. In addition to being more flexible, negotiation differs from formal advertising in two important respects. One, in a negotiated procurement there is no public opening of offers. Two, although full and free competition is still required in negotiation, the contracting agency is much more able to give weight to factors other than price in determining the acceptability of a particular bid. See id. at Sec. 2.23, at 21-22.
 
 
 [5]
 Hirsch found the Bechtel estimate to be unreasonable on the grounds that it was incomplete, that he had been unable to examine the relevant backup information, and that it used unit price figures that were outdated
 
 
 [6]
 Due to offsets for monies that the Authority was holding for Square/La Fera's account, the BCA granted the Authority a net award of only $2,642,941.31
 
 
 [7]
 In addition to judicial review of the BCA's decision, Square/La Fera also filed a civil action against the Authority in federal district court, seeking damages for the Authority's deliberate withholding of the Bechtel estimate during the first quantum hearing. In its complaint, Square/La Fera contended that the Authority had breached the "Disputes Clause" in the defaulted contract through its failure to produce the Bechtel estimate in the first quantum hearing
 On September 28, 1984, the district court entered summary judgment in favor of the Authority in that breach of contract action, ruling that Square/La Fera had received its full remedy for the Authority's failure to disclose the Bechtel estimate when this court reversed the judgment from the first quantum hearing and remanded the case to the district court, and ultimately to the BCA, for a new hearing on the reasonability of the reprocurement. Square/La Fera appealed from this judgment. Appeal No. 84-2247. Pending appeal, the parties settled the case. Consequently, the appeal was voluntarily dismissed.
 
 
 [8]
 The sureties appealed from this decision. Appeal No. 85-1070. The parties subsequently settled the case pending appeal, however, and the case was voluntarily dismissed
 
 
 [9]
 Article 1.6 of the Square/La Fera contract, which establishes the procedure for resolving disputes arising under the contract, provides:
 DISPUTES
 (a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Board of Directors. The decision of the Board of Directors or its duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence. In connection with any appeal proceeding under this article, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.
 (b) This Disputes article does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decisions of the Board of Directors or its representative on a question of law.
 Disputes Clauses of this nature are standard contractual provisions in most government contracts. See United States v. Utah Constr. Co., 384 U.S. 394, 396, 86 S.Ct. 1545, 1547, 16 L.Ed.2d 642 (1966).
 
 
 [10]
 The Authority appointed a Prequalification Board to establish criteria for obtaining a reprocurement contractor. The Prequalification Board then compiled a list of fourteen prospective contractors for the reprocurement contract. After eliminating four of these prospective contractors from their list, the Prequalification Board held a preproposal meeting which eight of the remaining ten contractors attended. A representative of Square/La Fera also attended this meeting. Ultimately, six contractors submitted sealed proposals on the reprocurement contract. These proposals ranged from $19,579,576 to $24,662,572. After some minor negotiations, the Authority awarded the reprocurement contract on March 21, 1974 to the lowest proposer
 
 
 [11]
 Section 73 of that Act provides:
 Purchasing
 
 
 [73]
 Contracts for the construction, reconstruction or improvement of any facility when the expenditure required exceeds ten thousand dollars ($10,000) and contracts for the purchase of supplies, equipment and materials when the expenditure required exceeds two thousand five hundred dollars ($2,500) shall be advertised and let upon sealed bids to the lowest responsible bidder. Notice requesting such bids shall be published in a manner reasonably likely to attract prospective bidders, which publication shall be made at least ten days before bids are received and in at least two newspapers of general circulation in the Zone. The Board may reject any and all bids and readvertise in its discretion. If after rejecting bids the Board determines and resolves that in its opinion the supplies, equipment and materials may be purchased at a lower price in the open market, the Board may give each responsible bidder an opportunity to negotiate a price and may proceed to purchase the supplies, equipment and materials in the open market at a negotiated price which is lower than the lowest rejected bid of a responsible bidder, without further observance of the provisions requiring bids or notice. The Board shall adopt rules and regulations to provide for purchasing from the lowest responsible bidder when sealed bids, notice and publication are not required by this section. The Board may suspend and waive the provisions of this section requiring competitive bids whenever:
 (a) the purchase is to be made from or the contract is to be made with the federal or any State government or any agency or political subdivision thereof or pursuant to any open end bulk purchase contract of any of them;
 (b) the public exigency requires the immediate delivery of the articles;
 (c) only one source of supply is available; or
 (d) the equipment to be purchased is of a technical nature and the procurement thereof without advertising is necessary in order to assure standardization of equipment and interchangeability of parts in the public interest.
 
 
 [12]
 See n. 3, supra
 
 
 [13]
 In this argument, Square/La Fera relies heavily on our previous opinion in Square Constr. Co. v. Washington Metropolitan Area Transit Authority, 657 F.2d 68 (4th Cir.1981). In that opinion, we stated that the Authority's failure to disclose the Bechtel estimate struck at the very heart of the fact finding process entrusted to the BCA, and that, by depriving the BCA of the opportunity to consider the Bechtel estimate, dealt a fatal blow to the entire proceeding. Id. at 72. Consequently, we remanded to the district court, and ultimately to the BCA, for a new trial on all issues concerning damages and reprocurement costs following such additional discovery as the Board might deem appropriate. Id. at 73
 Square/La Fera now argues that the BCA's rulings concerning the incorporation of the record from the first quantum hearing did not abide by the mandate of this court. In particular, Square/La Fera objects to the BCA's introduction of the DeLeuw estimate into the second quantum hearing, and also to the introduction of the transcript of Mr. O'Hearn's testimony. See n. 2, supra.
 Our conclusion that the record from the first quantum hearing was fatally flawed resulted from the lack of evidence concerning the Bechtel estimate, not from the introduction of evidence concerning the DeLeuw estimate. Consequently, Square/La Fera's reliance on our previous opinion in this regard is misplaced.
 
 
 [14]
 We note that in addition to judicial review of the BCA's decision, Square/La Fera also filed a civil action against the Authority, seeking damages for the Authority's deliberate withholding of the Bechtel estimate during the first quantum hearing. See n. 7, supra. Among the damages that Square/La Fera sought in this civil action were the attorneys' fees that Square/La Fera incurred between August 1976 and March 1982 in the conduct of the prior proceedings before the BCA. The district court dismissed this action, which Square/La Fera appealed in No. 84-2247. The parties subsequently settled that case and the appeal was voluntarily dismissed. See n. 7, supra. Although that action apparently did not concern the attorneys' fees that Square/La Fera incurred in proceedings before the district court and this court, we mention the matter out of an abundance of caution